Dorothy M. WALKER, Executrix of the Estate of Ora A. Walker, Plaintiff-Appellee,

v.

FIRESTONE TIRE & RUBBER COMPANY, Defendant-Appellant.

No. 351, Docket 32860.

United States Court of Appeals Second Circuit.

Argued March 24, 1969.

Decided June 19, 1969.

Albert Coffrin, Burlington, Vt. (Coffrin & Pierson, Burlington, Vt., on the brief), for appellant.

Alden T. Bryan, Burlington, Vt. (Black, Wilson, Curtis & Bryan, Burlington, Vt.), for appellee.

Before WATERMAN, MOORE and FRIENDLY, Circuit Judges.

MOORE, Circuit Judge:

Ora A. Walker, a salesman of technical hydraulic equipment, was in Burlington, Vermont, on assignment in January 1967 when he was involved in a fatal automobile accident. His widow and executrix, Dorothy M. Walker, sued the Firestone Tire and Rubber Co. (Firestone), among others, alleging in part that the accident occurred as a result of a defective tire manufactured by Firestone which is said to have suddenly deflated, causing the car to go out of control and strike a tree. The jury returned a $52,000 verdict in favor of the plaintiff and against Firestone and judgment was entered in that amount. Firestone appeals, contending that the trial court committed reversible error (1) in admitting Plaintiff's Exhibits 1 and 2; (2) in excluding questions directed at impeaching an expert witness called by plaintiff; (3) in excluding portions of a deposition; (4) in permitting improper cross-examination of a witness; (5) in charging the jury on the measure of damages; and (6) in failing to grant Firestone's motions for a directed verdict, for judgment notwithstanding the verdict and for a new trial.

The accident out of which this suit arose occurred on January 26, 1967, on Route 7 in the Town of South Burlington, Vermont, at approximately 10 p. m. Apparently there were no eye witnesses since none testified. There is no dispute, however, that the car decedent was driving, traveling in a northerly direction, swerved sharply into the southbound lane, crossed the road, mounted a granite curbing and struck a large elm tree. No other car was involved in the accident and the decedent was the sole occupant of the car. The investigating officer identified tire marks leading to the tree as "wavery" and ruffled, but he declined to characterize them as skid marks. He also testified in his opinion that Walker's car was traveling at a high rate of speed at impact, giving as a conservative estimate 65 miles per hour. Estimates of other witnesses gave projected speeds of 30 to 50 miles per hour. There was substantial evidence showing, and the plaintiff concedes, that the decedent had been drinking prior to the accident. The amount of liquor he had consumed, however, was subject to vigorous debate during the course of the trial.

The granite curbing, mounted by decedent's car, was estimated to be eight inches in height and had sharp edges. In the car's trajectory to the point of impact, it also crossed over a flat concrete pad, lying beyond the curbing, three to four inches in height.

When the motor vehicle was examined after the accident, both left tires, front and back, were deflated and the rims of both wheels were bent. In order to tow the car away, the damaged left rear tire had to be removed and replaced by the spare. This was done and the wheel removed was placed in the back seat of the car. It was not necessary to replace the front left tire which was also deflated since the car was towed with its front end up. Although the plaintiff claims that the accident was caused by the defective left rear tire, the damage to both rims was similar.

Two to five days later, the tire and wheel which had been placed in the back seat of the car disappeared from the car. Plaintiff's Exhibits 1 and 2, a tire and rim, similar to those on the front of the motor vehicle, were introduced at trial over the strenuous objection of Firestone. The objection related to the validation of the exhibit. The plaintiff's entire case on Firestone's liability was predicated on the claim that the left rear tire suddenly deflated, due to a manufacturing defect, causing the car to go out of control and to strike the tree.

■ Firestone claims that the tire and rim were erroneously admitted because the plaintiff had completely failed to identify them as being the identical tire and rim on the car at the time of the accident. And even if identify had been proven, Firestone argues, there was an absence of proof showing that there had been no substantial change in the condition of both between the time of the accident and the commencement of the trial.

Identification of the rim and tire was somewhat unusual in that the investigating officer's testimony, which was used as a foundation for the exhibits, was slightly equivocal. Nonetheless its admission was within the discretion of the trial judge. The officer, Louis Delillo, comparing the proffered exhibits with photographs taken at the scene of the accident, did make an identification of the Plaintiff's Exhibits 1 and 2 as coming from decedent's car. Although he later backed away from this identification, he did state, in viewing the photos and the exhibits, "it is the rim of the car of the accident I investigated and it is a snow tire." In response to the question by plaintiff's counsel "you are quite sure about the rim, are you, the rim does appear to be the same?," he answered "According to the picture, yes, in comparison to the picture in that rim there, yes."

There were also other facts supporting the admissibility of the exhibits. The owner of the service station who installed two of the snow tires on the car in question testified he had purchased numerous tires of the size and style of Plaintiff's Exhibit 1 and had, in fact, mounted two on decedent's car. The tow truck driver, who had removed the left rear tire from the car prior to pulling it from the scene of the accident, testified that the tire and rim appeared to be the same.

■ In regard to the claim that plaintiff offered no proof that there had been no material change in the condition of the exhibits, the tire and the rim, being from a car which had been driven only 35 miles at the time of the accident, were not subject to easy alteration. While it is true that the plaintiff cannot bootstrap herself by having the defendant introduce evidence tending to validate the admission of the evidence, see McCormick on Evidence at 129–130, the defendant did make the argument during trial that the front and back left tires deflated when they hit the granite curbing and that the damage to the front left rim was very similar to the damage to the back left tire rim, implying that no substantial change had in fact occurred between the accident and the trial.

The cases cited by Firestone to the contrary deal with situations where the admission of evidence was held to have been error because the evidence was easily alterable. In Sears Roebuck & Co. v. Daniels, 299 F.2d 154 (8th Cir. 1962), cited by appellant, it was held that it was not error to exclude evidence of-

fered by the defendant where the defendant admitted it might not be the same, although it was just like the item in question. But while it might not have been error for the trial court to have excluded the tire and rim, because of insufficient identification, the inquiry is whether the trial judge committed error by admitting them. In fact, had we been the trial judge, because plaintiff failed to introduce other evidence explaining how the tire and rim had gotten into her counsel's hands, we might very well have ruled that they were not admissible and that an adverse inference was to be drawn on account of that failure. Yet the trial judge has wide discretion on preliminary issues of admissibility—including the identity of articles offered in evidence. Here, although we are not without some doubt on the matter, there does seem to be support for his conclusion.

Firestone's liability was largely predicated on the claim that due to a manufacturing defect, the left rear tire deflated while decedent was driving along Route 7, causing his car to swerve into the tree. In support of this contention plaintiff called Andrew James White, allegedly an expert on the reconstruction of accidents. It was White's view, after examining the tire and the rim, that there was an excess of rubber situated on the toe of the bead of the Firestone tire and that this asserted defect allowed the bead of the tire to become unseated and caused the tire to go flat while the car was in operation. The toe of the bead is apparently a portion of the tire that comes into contact with the rim. Since the question of causation of the accident was crucial, it would not be an overstatement to characterize plaintiff's case as relying primarily on White's testimony and credibility.

Firestone vigorously attempted to attack White's credibility. On cross-examination, White was questioned on his educational background; he testified he graduated from the Ringe Technical School in Cambridge, Massachusetts, and had one year at Suffolk Law School.

On further inquiry, White admitted that Ringe Technical School was a public high school. Firestone's attorney then tried to bring out that in a prior but unrelated New Hampshire case White had testified that the school was other than a public high school. The Court excluded the question as immaterial. In response to the question of how many patents White had, White stated he had 18 patents. Firestone then inquired whether he had testified in the New Hampshire action that he had over 90 patents. This question was also excluded. All attempts by Firestone to show, by cross examination, that White had testified incorrectly with respect to his qualifications in another case were cut off summarily by the trial judge.

The Court affirmed that Firestone's counsel could question White all he wanted on his qualifications, "[b]ut, what he testified in some other case is not material in this case, unless it had to do with this particular tire." Firestone's counsel then stated, after some colloquy, "Well, may the record show, Your Honor, I would like to ask a number of questions similar to those I have already asked, relative to his testimony in the New Hampshire case" * * * "and I believe the Court would rule it improper and I would like an objection noted, because I would like to proceed." The Court responded "You may."

■ However, the rule seems to be well settled that although the opponent is not permitted to adduce extrinsic evidence that a witness lied on a previous occasion, he may nonetheless ask questions to that end. See Pullman Co. v. Hall, 55 F.2d 139, 141 (4th Cir. 1932); ALI Model Code of Evidence Rule 106. While a witness' testimony regarding collateral matters—here an unrelated trial—may not be refuted by calling other witnesses or by production of extrinsic evidence, there is nothing improper in asking questions relating to extrinsic matters in the hope of undermining the witness' credibility. Thus a copy of the New Hampshire proceedings offered by Firestone to show that White had made

misstatements as to his qualifications was properly excluded. In fact the Court in the New Hampshire action found that White "intentionally gave false testimony." But in excluding the questions Firestone's attorney sought to ask White concerning that prior testimony, the trial court prohibited proper impeachment of the plaintiff's key witness. Since virtually the whole of plaintiff's case was based on White's testimony, the error can only be regarded as material and significant.

Firestone also contends that it was error to exclude portions of Dr. Larry D. Shaw's deposition where he stated in response to a question posed by Firestone's attorney that he thought it *probable* that decedent had more than 0.108% alcohol in his blood at the time of the accident. Prior to trial Dr. Shaw moved from Vermont to Arizona and was not available at the trial. As noted, plaintiff concedes that Walker had a few drinks with a friend before the accident. Dr. Shaw, an assistant State Pathologist at the time, performed an autopsy on the body of the decedent and a blood sample was taken some eleven hours after the accident. Walker died nearly eleven hours after the collision. A test of the blood sample showed 0.108% alcohol by weight. Any person with more than 0.100% apparently is "under the influence of intoxicating liquor," and there was testimony that there is a high probability that such a person would be unable to operate a car safely.

The Court excluded Dr. Shaw's deposition answer as "duplicitous," apparently meaning that it was repetitive, but there was no further elaboration. However, the question put to Dr. Shaw called for testimony based upon a reasonable certainty and, standing alone, was competent to prove a material fact, namely, that Walker was intoxicated at the time of the collision. It was especially material because there was additional testimony by Dr. Shaw that alcohol in a person's blood "burns off" or metabolizes at an average rate of 0.015% per hour. Since Walker died nearly eleven hours

after the accident, the doctor projected that his blood sample at the time of the accident was 0.218%. A person with blood alcohol content of 0.20% would be grossly intoxicated. The answer excluded by the trial judge relating to this proof was part of Firestone's re-direct examination.

■ The question to Dr. Shaw on re-direct in the deposition as to whether it was *probable* that the decedent had more than 0.108% alcohol in his blood at the time of the accident, in one sense, was repetitive of his testimony on direct examination when he projected the alcohol content of decedent's blood to be 0.-218%; but between Dr. Shaw's direct and re-direct examination, he had answered "Yes" to the question asked by plaintiff's attorney on cross-examination whether it was true "You could not say, with any reasonable certainty, * * * the blood level alcohol level to Mr. Walker when he arrived at the hospital was higher than 0.108%." Dr. Shaw's affirmative answer was inconsistent with his prior projection of a 0.218% alcohol content. Since it is the fundamental function of jurors to choose between conflicting statements and to believe those they think most credible, it was error for the Court to prevent Dr. Shaw from correcting that inconsistency on re-direct.

Because of this exclusion and the limitation of Firestone's attempted impeachment of plaintiff's expert witness (in addition to the somewhat unusual validation of the tire and rim), we conclude that a new trial is required.

■ As to Firestone's claim that the trial court erred when it permitted excessive cross-examination of Dr. Richard S. Woodruff, Pathologist for the State of Vermont, we find that the questions asked of the witnesses were proper hypothetical questions and were sufficiently grounded in the evidence to be admissible. No abuse of discretion is evident. The charge to the jury on the measure of damages, authorizing recovery for "pecuniary loss" which included "the loss of decedent's advice, counsel,

guidance and assistance to his family as well, had he lived," was not erroneous. Vermont law allows recovery of a widow's loss of her husband's "care and protection" and the children's loss of his "intellectual and moral training" as elements of damages within the meaning of the term "pecuniary loss." Lazelle v. Newfane, 70 Vt. 440, 461, 41 A. 511, 513 (1898). Decedent earned $15,000 a year, had excellent opportunities for advancement and had a life expectancy of nearly 30 more years. The jury was properly charged on these factors and the award of $52,000 was not excessive.

The motions for directed verdict, for judgment notwithstanding the verdict and for a new trial because the jury's verdict was against the weight of the evidence were properly denied.

The judgment below is reversed and the case remanded for a new trial.