Jeffrey A. **BENJAMIN**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 81–729.

District of Columbia Court of Appeals.

Argued Oct. 26, 1982.

Decided Dec. 15, 1982.

A. Franklin Burgess, Jr., Public Defender Service, Washington, D.C., with whom William J. Mertens, Public Defender Service, Washington, D.C., was on the brief, for appellant.

Lisa J. Stark, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., John A. Terry, Asst. U.S. Atty., Washington, D.C., when the brief was filed, John R. Fisher and Barry M. Tapp, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEBEKER, PRYOR and BELSON, Associate Judges.

NEBEKER, Associate Judge:

A jury convicted appellant of assault with a dangerous weapon, D.C.Code 1981,

§ 22–502, assault with intent to rob while armed, *id.,* §§ 22–501, –3202, and carrying a pistol without a license, *id.,* § 22–3204. Appellant contends that his Sixth Amendment right of confrontation was abridged by the trial court's limitation on bias cross-examination of the complaining witness.[1] We agree, and therefore reverse the convictions and remand for a new trial.

The government's case at trial was primarily built upon the testimony of the complainant, Frederick Sykes. Sykes testified that on the afternoon of August 19, 1980, he was gambling with a friend when appellant approached him and demanded some money. Sykes refused, scuffled with appellant, and ran outside and down the street. Before long, appellant again approached Sykes, put a gun to his head, and demanded his money. Sykes resisted, and during the struggle, was shot in the stomach.

The defense version of the events prior to the shooting was similar to Sykes' in all respects except one. Five defense witnesses testified that it was Sykes, and not appellant, who was carrying the gun. The sole defense witness present at the actual shooting, testified that when Sykes and appellant encountered each other for the second time, they began to argue. When their argument grew more intense, the two began to struggle. During the struggle, Sykes reached for his gun which he carried in his waistband. When appellant grabbed Sykes' hand to prevent him from withdrawing the gun, Sykes accidently pulled the trigger and shot himself in the stomach.

Before resuming the case on the second day of the trial, the trial judge met with the Assistant United States Attorney and counsel for appellant. At this meeting, appellant's counsel requested that she be allowed to cross-examine Sykes about a charge of assault with a deadly weapon (crowbar) filed against him in Juvenile Court which was dismissed the day before the grand jury proceedings began in the present case, and three pending counts of sale of drugs to police officers which had been reduced to possession charges. Counsel desired to use this information to impeach Sykes with regard to possible bias. The ensuing dialogue culminated in the court's refusal to permit any questioning of Sykes concerning these charges. The court appeared to base its ruling on the fact that Sykes was the complaining witness and "not an informant or a witness for the government."

The Sixth Amendment to the Constitution guarantees the right of the accused in a criminal prosecution "to be confronted with the witnesses against him," *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 1109, 39 L.Ed.2d 347 (1974). An essential component of this right is the opportunity to effectively cross-examine the government's witnesses. *Id.; Coligan v. United States,* D.C.App., 434 A.2d 483, 485 (1981); *Gillespie v. United States,* D.C.App., 368 A.2d 1136, 1138 (1977). One avenue of cross-examination which is always available, particularly in a criminal case, is the attempted demonstration of a witness' bias or motivation in testifying for the government. *Smith v. United States,* D.C.App., 392 A.2d 990, 992 (1978). The opportunity to present evidence of bias becomes particularly important when, as here, the credibility of a key government witness is the central issue. *Davis v. Alaska, supra* 415 U.S. at 317, 94 S.Ct. at 1110; *Coligan v. United*

1. Appellant also challenges the trial court's ruling excluding evidence of the complaining witness' reputation for violence and specific prior bad acts and the trial court's refusal to issue appellant's requested missing witness instructions. Given our disposition of this case, these issues need not be addressed. However, it is a matter of considerable doubt whether evidence of the complainant's violent character is admissible where the defendant's factual claim is that the gun went off by accident while still in the hand of the complainant. To the extent the defense had a flavor of self-defense in justification for entering into combat in the beginning of the encounter, it became legally irrelevant to the causative event—the shooting—as described by the defense. Appellant's point is really aimed at an attempt to show that overall the complainant was more blameworthy than he, and that the jury should acquit on that ground. Of course, jury nullification will not be encouraged by the courts. *See Watts v. United States,* D.C.App., 362 A.2d 706, 710–11 (1976) (en banc).

*States, supra* at 485. We note that the trial court does maintain some control, through the exercise of discretion, regarding the manner and extent to which bias may be illuminated. This discretion does not, however, extend to the complete elimination of bias evidence.

 The jury here never heard evidence that was essential to their duty of assessing the credibility of the government's key witness, Sykes. The trial court erred in refusing to permit cross-examination of Sykes which would have revealed that he had had a criminal charge dismissed during the course of appellant's prosecution and had charges reduced in another case that was pending against him at the time of the trial. Without this evidence, the jury had no opportunity to assess his potential bias.

*Reversed and remanded for new trial.*