**Jerome E. GOLDMAN, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 82–160.**

District of Columbia Court of Appeals.

Submitted Sept. 29, 1983.

Decided March 15, 1984.

---

Stephen G. Milliken, Washington, D.C., appointed by the Court, for appellant.

Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, Michael W. Farrell, and G. William Currier, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before NEWMAN, Chief Judge, and MACK and PRYOR, Associate Judges.

NEWMAN, Chief Judge:

Goldman was charged with armed robbery and convicted of the lesser offense of robbery. On this appeal, he contends: (1) the trial court's curtailment of the cross-examination of the complainant and a second government witness violated his sixth amendment right to confrontation; (2) the trial court erred in denying a mistrial because of prosecutorial misconduct in eliciting testimony that Goldman's trial counsel had advised him to plead guilty; and (3) the bias exhibited by the trial court denied him a fair trial. We conclude that there was prosecutorial misconduct[1] as well as a violation of Goldman's right to confrontation through the improper curtailment of cross-examination. We reverse.

Gene Ray Artis testified that on December 17, 1980, he went to Bell's Liquor Store on the Maryland side of Central and Southern Avenues. Upon leaving the store, a man stopped and asked him if he had seen any car keys on the ground. Artis testified that he looked at the man, then looked down, and responded that he knew nothing about missing keys. He then continued on his way.

A few moments later, the man again approached Artis, stood directly in front of him and announced that this was a hold-up. Simultaneously, Artis was yoked from behind by a second person, who stated that "If you move, I'll blow your insides out." Artis testified that the second assailant held an object to his back which felt like a gun. The first man began frisking Artis with the assistance of a third person who was on the victim's left side. The three persons then marched Artis across the street into the District of Columbia while searching him. The men emptied his pockets, removed $200–$230 and then left the scene. Artis turned and saw three black males running across the street toward a hill. Artis returned to Bell's Liquor Store and reported the robbery to the manager, Oliver Mallory. The police were called.

Detective Roland Smith responded to the call and interviewed Artis. Approximately four hours after the robbery, Smith showed Artis ten photographs, including a picture of Goldman. Artis identified Goldman's photograph as being the man who asked about the keys, announced the robbery and marched him across the street. Eight months later, Artis identified Goldman from a line-up photograph shown to him by Detective Smith.

Artis testified that he saw Goldman clearly when asked about the keys, before the appellant initially departed, when he announced the hold-up and when Goldman marched him across the street. He testified that the offense took from five to six min-

---

1. The government conceded, on the facts of this case, that the prosecutor's conduct constituted error, *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), and that, on the facts of this case, the error was not harmless. *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Since there may be a new trial on remand, we deem it appropriate to address Goldman's cross-examination contentions. We need not address his allegations of trial court bias.

utes and that he was very sure of his in-court identification.

On cross-examination, Artis acknowledged that the discussion among the assailants when he was grabbed lasted only two to three seconds and that the march across the street took a "few seconds." He further acknowledged that the emptying of his pockets took between five to ten seconds. He admitted that the entire event had taken approximately fifteen seconds and labeled his earlier estimate a "misjudgment."

Artis had testified at a pretrial suppression hearing that Goldman was standing approximately two feet in front of him when he asked about the keys. Artis stated that he had seen the questioner clearly. During cross-examination at the suppression hearing, trial counsel probed for particular identifying facial characteristics relied on by Artis to identify Goldman. In response to these questions, Artis indicated that he recalled the scar on Goldman's forehead and the scar underneath his eye.

When trial counsel pursued this line of questioning at trial, he was foreclosed by the court:

DEFENSE COUNSEL: Do you remember his eyes?

WITNESS: That's one of the most definite ways I had to try to identify anybody is by the eyes.

DEFENSE COUNSEL: The eye area?

WITNESS: Yes, indeed.

DEFENSE COUNSEL: You see the prominent scars above his eyes, one, two, and the third one below the eye? I guess that's the most prominent. Do you recall that? Were you that close that you saw that?

WITNESS: Some of it, but that isn't what I was focusing on. I was focusing on his nostrils, his eyes.

DEFENSE COUNSEL: How about the length of his hair; do you remember what that was?

WITNESS: They had a tam, what you call it, on the head at the time. I couldn't tell about his hair.

DEFENSE COUNSEL: Your testimony is you don't remember the scar below his eye there?

GOVERNMENT COUNSEL: Objection, Your Honor.

THE COURT: That's not his testimony.

WITNESS: I can barely see that now.

DEFENSE COUNSEL: Do you recall testifying in a hearing earlier today?

WITNESS: Yes, I do.

DEFENSE COUNSEL: Do you recall my asking you about a moustache?

WITNESS: Yes, I do.

DEFENSE COUNSEL: I believe at the time you testified he seemed clean-shaven because there wasn't much of a moustache there?

WITNESS: Yes.

DEFENSE COUNSEL: Do you recall my asking you if you remembered his eyes and you said, yes, the shape of his eyes?

GOVERNMENT COUNSEL: Objection. [Defense Counsel] is testifying well beyond the scope of my direct examination, and certainly Mr. Artis has indicated he remembers Mr. Goldman quite distinctly from that event from all of his facial features, and what Mr. Milliken is attempting to do is bring in evidence that was presented for another purpose.

THE COURT: The point is well taken. You've gone well beyond the scope of the direct examination. It's beginning to be an *ad nauseam* right now frankly.

DEFENSE COUNSEL: Your Honor, may we approach the bench?

THE COURT: No, no. I think you've been dragging this out. The testimony is quite clear on this. Do you have any other questions on any other responsible issue in the case that you want to ask this witness?

DEFENSE COUNSEL: Your Honor, I believe that what I'm doing is probing the question of identification which is the central issue in this case, and if we might approach the bench—

THE COURT: No, you don't have to approach the bench.

Ladies and gentlemen, I discourage approaches to the bench. I feel like that's whispering in front of company and 99 times out of 100 there's nothing to it. You have overdone it. I ruled on her objection. I think you're far outside the scope of her direct. Unless you have something else, I'm going to rule right on every question right now. Go ahead. What is your next question?

DEFENSE COUNSEL: My next question concerns a prior inconsistent statement given in a hearing this morning, regarding identification in the area of facial characteristics.

THE COURT: That's overruled. That has nothing to do with it. Do you have a written prior inconsistent statement?[2]

Goldman argues that the trial court unduly curtailed his cross-examination of Artis by virtually preventing him from asking the only eyewitness to a crime questions about his opportunity to observe identifying characteristics of the accused. He argues that if Artis had testified to not remembering the scars, he would have been subject to impeachment with his prior inconsistent statements made at the suppression hearing; if he testified to remembering the scars, defense counsel could have introduced medical evidence indicating that no scars existed at the time of the incident. In response, the government contends that defense counsel engaged in extensive cross-examination on the complainant's identification of Goldman and elicited testimony during trial on the issue of Goldman's scars. The government further claims that the testimony elicited at the suppression hearing was beyond the scope of the direct examination and therefore inadmissible at trial. The government argues that there was no violation of Goldman's Sixth Amendment right to confrontation due to the extensive cross-examination procedures. We disagree.

■■■ The Sixth Amendment guarantees a defendant in a criminal prosecution the opportunity to be confronted with the witnesses against him. *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). The accused's right under the confrontation clause includes as an essential component the right to cross-examine the government's witnesses. *Id.* at 315–16; *Benjamin v. United States*, 453 A.2d 810, 811 (D.C.1982). The trial judge has considerable discretion to limit the extent of cross-examination. *Rogers v. United States*, 419 A.2d 977, 980 (D.C.1980). And the court may always restrict the subject of the inquiry if the danger of unfair prejudicial effect of the evidence outweighs its probative value. *See Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931); *Springer v. United States*, 388 A.2d 846, 854–56 (D.C.1978). However, in *Springer, supra,* this court stated:

[T]he permissible scope of cross-examination "must be limited with the utmost caution and solicitude for the defendant's Sixth Amendment rights," *United States v. Houghton, supra* [554 F.2d 1219] at 1225, and "this discretionary authority to limit cross-examination comes into play after there has been permitted as a matter of right sufficient cross-examination to satisfy the Sixth Amendment. *United States v. Bass*, 490 F.2d 846, 857–858 n. 12 (5th Cir.1974). The trial court's "wide latitude in the control of cross-examination ... 'cannot ... justify a curtailment which keeps from the jury relevant and important facts bearing on the trustworthiness of crucial testimony.'" *United States v. Harris*, 501 F.2d 1, 8 (9th Cir. 1974), *quoting Gordon v. United States*, 344 U.S. 414, 423, 73 S.Ct. 369, [375] 97 L.Ed. 447 (1953).

388 A.2d at 855. The need for full cross-examination is particularly acute in a case

---

**2.** Before the government called its second witness at trial, appellant's counsel attempted to make a record concerning the curtailment of cross-examination. The court refused to permit the making of such a record.

where questioning is intended to demonstrate the lack of reliability or credibility of an identification witness. *Singletary v. United States*, 383 A.2d 1064, 1073 (D.C. 1978).

■ As we have recognized, to satisfy the Sixth Amendment, the trial court should permit exploration of all matters that contradict, modify or explain testimony given by a witness during direct examination. *Morris v. United States*, 398 A.2d 333, 339 (D.C.1978).

■ However, in reviewing claims of error based upon the trial court's excessive restriction of cross-examination, we have held that

the standard of review employed by this court will depend upon the scope of cross-examination permitted by the trial court measured against our assessment of the appropriate degree of cross-examination necessitated by the subject matter thereof as well as the other circumstances that prevailed at trial.

*Springer v. United States, supra*, 388 A.2d at 856. Where an examination of the record reveals that the error committed is of constitutional dimension, the court must decide whether the error is of such magnitude to require reversal per se; or whether the reversal may be considered harmless beyond a reasonable doubt under *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). If there has been no cross-examination, curtailment will constitute per se reversible error. Where some cross-examination has occurred, the court will review for harmless error under *Chapman v. California, supra*. *Tabron v. United States*, 444 A.2d 942, 944 (D.C.1982).

■ For a conviction to stand despite constitutional error,

it must be clear beyond a reasonable doubt "(1) that the defendant would have been convicted without the witness' testimony, or (2) that the restricted line of

inquiry would not have weakened the impact of the witness' testimony."

*Springer v. United States, supra*, 388 A.2d at 856. The first element of the test is applied when it is not possible to determine what facts defense counsel would have elicited upon cross-examination. The second element is applied when the excluded testimony is available for court review. *Tabron v. United States, supra*. As the trial court precluded cross-examination on the identification issues raised in the pretrial suppression hearing, any analysis of the cross-examination curtailment must involve consideration of the first element.[3]

■ According to these principles, examination of the record reveals curtailment of an appropriate line of cross-examination which prevented the jury from receiving information on Artis' identification of Goldman as the man who committed the robbery. Although Artis had identified Goldman as the robber, he had offered only a very generalized physical description of the man who committed the offense. Artis had been impeached on cross-examination with his direct examination testimony estimating the time period during which he had observed the robber. At the suppression hearing, Artis testified to observing scars which allegedly did not exist at the time of the crime. The identification of Goldman by Artis is clearly central to the issues in this case. Had he been given the opportunity, trial counsel could have explored the inconsistencies in Artis' testimony regarding what he had and had not seen on the day of the offense. The jury could have then assessed the credibility and reliability of Artis based upon a full and thorough exploration of these facts.

The trial court's error in curtailing cross-examination is rendered more serious by the fact that Artis was the sole eyewitness to the crime and the most important government witness. His testimony provid-

---

**3.** *See* note 2, *supra*. The refusal of the trial judge to let defense counsel make a record, including an appropriate proffer, leaves us no choice but to apply the stricter of the two tests

of *Tabron*. Application of the less strict of the two tests, however, would lead us to the same conclusion.

ed the only evidence linking Goldman to the robbery. It is extremely unlikely that Goldman would have been convicted without Artis' testimony. It is likewise highly probable that the restricted line of inquiry would have weakened the impact of Artis' identification testimony. Thus, extensive cross-examination as to ambiguities in Artis' testimony was necessary to satisfy the Sixth Amendment right to confrontation.

*Reversed.*

PRYOR, Associate Judge, concurring:

In a circumstance where the government has conceded reversible error as a consequence of the prosecution's introduction of evidence bearing upon appellant's conversation with his lawyer regarding a plea of guilty, the majority has chosen to discuss, at length, the trial court rulings respecting cross-examination by appellant's counsel.

I do not reach the latter question.