499 A.2d 1215 (1985)
In the Matter of C.B.N. Appellant.
No. 83-1533.
District of Columbia Court of Appeals.
Argued November 14, 1984.
Decided November 7, 1985.
*1216 David J. Sitomer, Washington, D.C., appointed by the court, for appellant.
Karen J. Krueger, Asst. Corp. Counsel, Washington, D.C., with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellee.
Before PRYOR, Chief Judge, BELSON, Associate Judge, and PAIR, Senior Judge.
BELSON, Associate Judge:
A Family Division judge found appellant guilty of armed robbery, D.C.Code §§ 22-2901, -3202 (1981 & 1985 Supp.), and adjudicated him a delinquent. Appellant assigns as error the trial court's refusal to permit the defense to introduce extrinsic evidence to impeach the government's key witness. We agree and reverse.[1]

I
The complainant testified that at approximately 12:15 a.m., on August 3, 1983, he was walking on Independence Avenue, S.E., between 9th and 10th Streets. He saw a group of five or six boys walking toward him on the opposite sidewalk. After they passed, complainant crossed Independence Avenue and continued walking away from the boys. Complainant explained that one of the boys from the group then ran back, jumped in front of complainant, and pointed a revolver at him. Complainant later identified the gunman as W.E. Upon W.E.'s command, complainant handed over his wallet and his Seiko watch. As W.E. started to run away, complainant asked for his documents. After removing about $50, W.E. threw the wallet to complainant.
A juvenile, D.W., testified that shortly before the robbery he had chanced upon W.E., appellant, and about five other boys. D.W. decided to walk with them. In conversation, appellant stated to D.W. that W.E. possessed a gun. W.E. confirmed that by lifting up his shirt to reveal a gun. D.W., considering that action just "play," continued walking with the group. Thereafter, D.W. observed complainant walking toward the boys on the opposite sidewalk of Independence Avenue. After complainant passed the group, complainant crossed the street and continued walking in the opposite direction. D.W. explained that *1217 appellant and W.E. then dropped back from the group, turning in the direction of complainant. D.W. remained with the group, which had stopped walking about 3½ car lengths away from complainant. D.W. then watched as W.E. pointed his gun at complainant while appellant stood about 2½ feet behind complainant. Complainant gave his wallet to W.E. W.E. and appellant then ran away past D.W. D.W. explained that he did not run away with appellant and W.E. Instead, he reported the robbery to the police.
According to another government witness, police officers stopped appellant, W.E., and two other juveniles the following morning in response to two radio lookouts. They recovered a gun that W.E. threw into the bushes. They also searched appellant and recovered from him a Seiko watch. Later, complainant identified that watch as the one stolen from him and the gun as the one used in the robbery. Complainant also identified W.E. as the gunman.
W.E. testified for the defense. According to W.E., he had joined with D.W., who held the gun, and another boy, D.S., in robbing complainant. All three boys stood in front of complainant. W.E. stated that appellant had not participated in the robbery, but instead had remained down the street with some other boys.
Appellant testified to the same effect. He explained that he possessed complainant's watch because he was holding it for W.E., who did not have a pocket. Appellant attested that he had seen W.E. wearing the watch all day and thought W.E. owned it.

II
Appellant asserts that the trial court erred in excluding extrinsic evidence proffered to impeach D.W., the government's only witness able to identify appellant as one who assisted in the robbery.
D.W. testified for the government in the afternoon of the second day of trial. Defense counsel introduced T.G. as a witness on the following morning, after the government had rested. T.G. was one of the boys with appellant and W.E. when they were stopped by the police on the morning following the robbery. Defense counsel questioned T.G. about an alleged conversation he had had with D.W. on the previous day.[2] The prosecutor objected to that question on the grounds that "an improper foundation" had been laid for impeaching D.W., and that the topic was not relevant. The defense counsel explained to the court that T.G. and four other boys present at the scene of the robbery would testify that D.W. had approached them the previous day and stated that he wanted money from the four boys or he would give testimony that would get them all in trouble. The court sustained the objection, observing that T.G. was not charged with the robbery. In ruling, the court did not refer to the lack of foundation for this impeachment, but stated that for the "alleged extortion" to be relevant, the threat had to be directed to appellant.
Appellant asserts that the excluded testimony of T.G. was relevant to demonstrate D.W.'s "bias" in that D.W.'s attempt to blackmail the other boys was indicative of "corrupt activity," provable by extrinsic evidence.
The government replies that the proposed impeachment concerned not bias or corruption, but prior bad acts by D.W., and as such "may be elicited only by cross-examination of the witness; it generally may not be proved by extrinsic evidence." Lawrence v. United States, 482 A.2d 374, 377 (D.C.1984) (citing United States v. Akers, 374 A.2d 874, 878 n. 9 (D.C.1977)).
For the purpose of examining appellant's argument, we look to some general precepts *1218 regarding the use of cross-examination and extrinsic evidence to show the bias or corruption of a witness. The Sixth Amendment of the Constitution guarantees to a criminal defendant the right to cross-examine the witnesses against him. See, e.g., Davis v. Alaska, 415 U.S. 308, 315-16, 94 S.Ct. 1105, 1109-10, 39 L.Ed.2d 347 (1974); Springer v. United States, 388 A.2d 846, 854 (D.C.1978). A respondent in a juvenile delinquency proceeding has an equivalent right as a matter of due process.[3] The trial court is vested with discretion to control the extent of cross-examination. Alford v. United States, 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931); Lawrence, 482 A.2d at 376. That broad discretion "`cannot . . . justify a curtailment which keeps from the jury relevant and important facts bearing on the trustworthiness of crucial testimony.'" Springer, 388 A.2d at 855 (quoting United States v. Harris, 501 F.2d 1, 8 (9th Cir. 1974), and Gordon v. United States, 344 U.S. 414, 423, 73 S.Ct. 369, 375, 97 L.Ed. 447 (1953)).
The trustworthiness of a witness' testimony may be undermined by demonstrating that bias or partiality motivates the witness. Benjamin v. United States, 453 A.2d 810, 811 (D.C.1982). The bias of a witness may be a crucial component in the jury's assessment of the credibility of a witness, and thus is "always a proper subject of cross-examination." Springer, 388 A.2d at 855 (quoting Hyman v. United States, 342 A.2d 43, 44 (1975)). Cross-examination concerning bias is particularly important where, as here, the credibility of the key government witness is the central factor to be weighed by the trier of fact. Davis v. Alaska, 415 U.S. at 317, 94 S.Ct. at 1111; Benjamin, 453 A.2d at 811; Springer, 388 A.2d at 855.
Although the trial court has broad discretion in regulating the extent of cross-examination for bias or prejudice, Flecher v. United States, 358 A.2d 322, 323 (D.C.), cert. denied, 429 U.S. 977, 97 S.Ct. 486, 50 L.Ed.2d 585 (1976), "the Confrontation Clause of the Sixth Amendment requires a defendant to have some opportunity to show bias on the part of a prosecution witness." United States v. Abel, ___ U.S. ___, 105 S.Ct. 465, 468, 83 L.Ed.2d 450 (1984) (citing Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347); accord Benjamin, 453 A.2d at 812.
The defendant need not merely accept a witness' responses to cross-examination concerning bias or prejudice. Johnson v. United States, 418 A.2d 136, 140 (D.C. 1980). Rather, the defendant may introduce extrinsic evidence to establish bias or prejudice because it is not a "collateral issue." Id. See also Abel, 105 S.Ct. at 469.
Thus, bias or prejudice impeachment differs from those areas of impeachment where the cross-examiner is prevented from proffering other witnesses or evidence to contradict the answer of a witness. For example, a witness may be cross-examined concerning a prior bad act bearing on veracity that has not been the subject of a criminal conviction, but the prior misconduct may not be proven by extrinsic evidence. Sherer v. United States, 470 A.2d 732, 738 (D.C.1983), cert. denied, ___ U.S. ___, 105 S.Ct. 325, 83 L.Ed.2d 262 (1984) (citing Akers, 374 A.2d. *1219 at 878 n. 9); see also FED.R.EVID. 608(b). The principal rationale for that limitation is to prevent the trial from "spin[ning] off into a series of sub-trials on collateral issues both confusing and time-consuming." Sherer, 470 A.2d at 738 n. 5 (quoting United States v. Robinson, 174 U.S.App.D.C. 224, 272, 530 F.2d 1076, 1079 (1976)). That limitation does not apply to extrinsic evidence of bias.
The term "bias" is utilized by some authorities as a shorthand reference to all forms of partiality that may be proven by extrinsic evidence. See, e.g., E. CLEARY, McCORMICK ON EVIDENCE § 40 (1984) (term "bias" includes favor, hostility, self-interest, corruption); 3 D. LOUISELL & C. MUELLER, FEDERAL EVIDENCE § 341 (1979) (term "bias" includes interest, motive, corruption). Wigmore describes three types of partiality that may warrant distrust: bias, interest, and corruption. 3A WIGMORE, EVIDENCE § 945, at 782 (Chadbourn ed. 1970). Wigmore defines "corruption" as "the conscious false intent which is inferable from giving or taking a bribe or from expressions of a general unscrupulousness for the case in hand." Id. Wigmore notes that the concept of corruption is not theoretically distinct; it is related to interest, bias, and character. Id. § 956, at 802-03. The "essential discrediting element is a willingness to obstruct the discovery of the truth by manufacturing or suppressing testimony." Id. § 956, at 803. McCormick observes:
Self-interest in an extreme form may be manifested in corrupt activity by the witness, such as seeking to bribe another witness, or by taking or offering to take a bribe to testify falsely, or by the making of other similar charges on other occasions without foundation.
McCORMICK § 40, at 87 (footnotes omitted).
Wigmore describes two forms of corruption that are relevant to the instant case: a statement by the witness of a general willingness to lie upon the stand, and an offer to testify falsely for money. 3A WIGMORE §§ 956-58. The alleged blackmail by D.W., the key government witness, fits within both categories. D.W. allegedly stated to the other boys that he was willing under oath to implicate them falsely. Furthermore, the alleged threat involved the very transaction  the armed robbery of complainant  at issue in appellant's trial.
We must grant that the proffered statement did not suggest that D.W. had attempted to blackmail appellant or that D.W. testified against appellant for pecuniary reasons. The case law and the rationale of the corruption doctrine extend, however, beyond incentives to fabricate that are associated personally with the defendant. The willingness to testify falsely goes to the core of the witness' credibility, regardless of his personal or pecuniary relationship with the defendant. See 3A WIGMORE § 957, at 803 (willingness to swear falsely negates presence of moral duty to speak the truth that is at the foundation of the theory of testimonial evidence); accord Johnson v. Brewer, 521 F.2d 556, 560-61 (8th Cir.1975) (error to restrict extrinsic evidence concerning informant-witness' alleged previous "frame-up" of an innocent person; such evidence would show that witness "was completely insensitive to the obligations of his oath and that . . . he had, as demonstrated in a parallel case, neither compunction nor scruple against `framing' a man"). But cf. United States v. Hively, 547 F.Supp. 318 (M.D.Pa.1982) (evidence of bribe to show corruption admissible only if offered regarding case on trial as distinguished from upcoming trial of same defendant).[4]
Thus, we agree with appellant that the alleged blackmail by D.W. was an example *1220 of corruption, rather than an instance of a prior bad act not the subject of a conviction. Therefore, extrinsic evidence should have been admitted to establish it, unless some other consideration justified the court's action in rejecting it. One consideration the government offered in argument before the trial court arose from the fact that appellant had not laid a foundation for the introduction of extrinsic evidence by questioning D.W. about the alleged blackmail. This court has held that a foundation is required for the admission of extrinsic proof of a witness' statements indicating bias for or against a party. See Simmons v. United States, 364 A.2d 813, 816 (D.C.1976) (witness questioned before admission of contradictory statements demonstrating bias). Thus, we are among the majority of jurisdictions in that we require a foundation for the admission of extrinsic evidence to impeach a witness with bias  at least where the impeachment is by a prior statement. See McCORMICK § 40, at 87-88; 3 LOUISELL & MUELLER § 341, at 479; see generally Annot., 87 A.L.R.2d 407 (1963).[5] For that reason, just as with the procedure for introducing inconsistent statements, the cross-examiner impeaching with bias should call the witness' attention to the time, place, and persons involved. McCORMICK § 40, at 87 n. 26. The rule expressed in Simmons concerning statements of bias logically extends to statements regarding corruption, which is related to both bias and interest. See 3A WIGMORE § 956, at 802-03, § 964, at 812 (when court requires preliminary question about former expression of bias, foundation required also for former expression indicating corruption). Thus, counsel normally must interrogate the assertedly corrupt witness before he may seek to prove prior expressions of bias or corruption by the introduction of other witnesses or evidence.[6]
Defense counsel here did not lay a foundation by asking preliminary questions of D.W. The record suggests that defense counsel may not have known of D.W.'s alleged blackmail until after D.W. left the stand. Defense counsel ordinarily should have requested the recall of D.W. to question him about his alleged statement. See Kitchen v. United States, 95 U.S.App.D.C. 277, 280, 221 F.2d 832, 835 (1955) (trial court has discretion to recall witnesses for good cause), cert. denied, 357 U.S. 928, 78 S.Ct. 1378, 2 L.Ed.2d 1374 (1958).
We do not find, however, that the absence of a foundation is fatal to appellant's *1221 argument. The court expressly ruled during the examination of T.G. that D.W.'s alleged blackmail of the other boys was not relevant, thus indicating that a request to recall D.W. would have been fruitless. Under these circumstances, the lack of a foundation cannot fairly be held to provide an alternate ground to affirm the exclusion of the impeachment testimony. Cf. Ibn-Tamas v. United States, 407 A.2d 626, 635-36 (D.C.1979) (appellate court can affirm trial court action on alternate legal ground despite trial court's erroneous reasoning).
We explained in Springer v. United States, 388 A.2d at 855-57, the circumstances under which restrictions of cross-examination will constitute error. We first determine whether the error is of constitutional dimension. Id. at 856. If the court's curtailment of cross-examination does not rise to the level of constitutional error, we apply an abuse of discretion standard. Id. at 854-56.[7] If the court's restriction rises to the level of constitutional error, but the court has permitted some cross-examination relevant to bias, we will evaluate the error under the harmless constitutional error test of Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Id. When the court, however, curtails the bias cross-examination in limine, a per se error standard applies. Id. See also Goldman v. United States, 473 A.2d 852, 857 (1984).
Strictly speaking, the judge here did not curtail cross-examination; rather she restricted extrinsic testimony. But the reason for her ruling  lack of relevance  applied to cross-examination as well. For that reason, and because the purpose of admitting the extrinsic evidence is the same as cross-examination  to undermine the credibility of the witness by demonstrating corruption  we will apply the tests as stated in Springer.
We need not decide whether to review under the per se or harmless error rule, for we are persuaded that the limitation amounted to reversible error under the constitutional harmless error test. See Lawrence, 482 A.2d at 378.
D.W. was the key government witness. He was the only witness to identify appellant. Complainant did not notice whether any of the boys in the group, other than the gunman, W.E., assisted in the robbery. Thus, not only was D.W. the only witness to identify appellant, complainant could not corroborate even the fact that a second person participated in the robbery.[8] Appellant's possession of complainant's watch provided some corroboration of D.W.'s testimony, but appellant offered an innocent explanation. The credibility of D.W. was, therefore, "the central issue." See Benjamin v. United States, 453 A.2d at 811. If believed, the testimony concerning the attempted blackmail would have sorely weakened the credibility of D.W.'s identification. See Goldman, 473 A.2d at 858. We hold that the error requires reversal.[9]
Reversed.
NOTES
[1] We do not therefore reach appellant's other claims of error.
[2] Apparently this alleged conversation occurred in the courthouse cafeteria during the lunch recess on November 15, 1983, just before D.W. testified. The judge adjourned the trial after the completion of D.W.'s testimony at 3:25 p.m. that day. T.G. took the stand at approximately 10:00 a.m., November 16, 1983.
[3] The Sixth Amendment guarantees do not directly apply to an adjudication of delinquency. McKeiver v. Pennsylvania, 403 U.S. 528, 541, 91 S.Ct. 1976, 1984, 29 L.Ed.2d 647 (1971). Rather, such a proceeding must meet the "essentials of due process and fair treatment" under the Due Process Clause. In re Gault, 387 U.S. 1, 30-31, 87 S.Ct. 1428, 1445, 18 L.Ed.2d 527 (1966). The Due process Clause of the Fifth Amendment is applicable to juvenile delinquency proceedings in the District of Columbia. In re J.T., 290 A.2d 821, 824 (D.C.), cert. denied, 409 U.S. 986, 93 S.Ct. 339, 34 L.Ed.2d 252 (1972). An adjudication of delinquency "cannot be sustained in the absence of sworn testimony subjected to the opportunity for cross-examination in accordance with our law and constitutional requirements." In re Gault, 387 U.S. at 57, 87 S.Ct. at 1459. Thus, the right to confrontation and cross-examination has equal application to adult criminal and juvenile delinquency proceedings. McKeiver v. Pennsylvania, 403 U.S. at 533, 91 S.Ct. at 1980.
[4] We recognize the existence of some degree of tension between the rule permitting extrinsic evidence of corruption and the rule, followed by some courts, forbidding extrinsic proof of a witness' prior act of perjury that is not the subject of a conviction. See, e.g., Walker v. Firestone Tire & Rubber Co., 412 F.2d 60, 63 (2d Cir.1969) (cross-examination, but not extrinsic evidence, permitted regarding previous alleged perjury of witness). This court has not directly ruled on the admissibility of extrinsic evidence of a witness' alleged perjury at an earlier proceeding that has not been the subject of a conviction, and we do not decide that issue here. In Sherer, 470 A.2d at 737-39, we addressed the argument that cross-examination concerning a witness' alleged prior perjury was improperly limited. In finding no error, we concluded in Sherer that the appellant submitted inadequate proof of the previous perjury. Id. In contrast, by statute, a witness may be impeached and the examiner need not be bound by a witness' answer, concerning certain criminal convictions. D.C.Code § 14-305 (1981).

An alleged prior act of perjury suggests, of course, the witness' willingness to lie upon the stand. There is a marked difference, however, between the nature of the extrinsic evidence to prove that a witness expressed a willingness to testify falsely and that necessary to prove perjury. The extrinsic proof of the former is relatively simple: another witness takes the stand to repeat the corrupt statement made by the witness. The extrinsic proof of a witness' prior perjury is more likely, however, to entail a complicated diversion from the trial at hand. The factual circumstances of the earlier trial, and whether the witness' testimony concerned a material matter, must be delved into to establish perjury.
[5] We express no opinion on the necessity of a foundation when the corrupt statements consist entirely of conduct rather than statements or statements plus conduct.
[6] We agree with the analysis in United States v. White, 225 F.Supp. 514, 520 (D.D.C. 1963), remanded on other grounds, 121 U.S.App.D.C. 287, 349 F.2d 965 (1965), that we are not bound to adopt the opposite conclusion because of Ewing v. United States, 77 U.S.App.D.C. 14, 135 F.2d 633 (1942), cert. denied, 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145 (1943). See M.A.P. v. Ryan, 285 A.2d 310, 312 (D.C.1971). As White points out, to the extent that Ewing suggests that a foundation need not be laid before showing bias by a prior statement, that suggestion is dictum because a foundation was indeed laid in Ewing through cross-examination.
[7] The court, for example, in admitting extrinsic evidence, was not necessarily required to permit all four boys present at the alleged blackmail attempt to take the stand. The trial judge maintains the broad discretion to preclude repetitive testimony. See, e.g., Davis v. Alaska, 415 U.S. at 316, 94 S.Ct. at 1110; Rink v. United States, 388 A.2d 52, 57 (D.C.1978); Hyman, 342 A.2d at 44-45.
[8] The trial judge was under the misapprehension that the complaining witness testified that two boys took part in the robbery. The record does not support that aspect of her findings.
[9] See Davis v. Alaska, 415 U.S. at 317, 94 S.Ct. at 1111 (credibility of key witness improperly restricted; reversal); see, e.g., Lawrence, 482 A.2d at 377-78; Goldman, 473 A.2d at 856-58; Benjamin, 453 A.2d at 811-12; Johnson, 418 A.2d at 141; Springer, 388 A.2d at 854-57; Moss v. United States, 368 A.2d 1131, 1134-35 (D.C.1977).