Samuel B. **WRIGHT**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 90–CF–885.

District of Columbia Court of Appeals.

Argued May 12, 1993.
Decided Feb. 3, 1994.

---

Michael L. Spekter, Washington, DC, appointed by this court, for appellant.

Roger L. Kemp, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher and Elizabeth Trosman, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before ROGERS, Chief Judge, and STEADMAN, and SULLIVAN, Associate Judges.

PER CURIAM:

Appellant Samuel B. Wright appeals his convictions[1] by a jury on the principal ground that the trial judge erred in denying a mistrial after a government witness, a former co-defendant who had pleaded guilty to the same burglary with which appellant was charged, was impeached with his prior convictions and then had a loss of memory. Appellant contends that despite an instruction following the striking of the witness' testimony, it was inevitable that the jury would conclude that because appellant was

---

1. Appellant was convicted of second-degree burglary, D.C.Code § 22–1801(b) (Repl.1989), destroying property, id. § 22–403, and second-degree theft. Id. §§ 22–3811, –3812(b).

arrested in a building with a convicted burglar, he was also guilty of the burglary, which the government argued was committed by two men, and that the instruction to strike would be incapable of curing the harm. We disagree, holding that the "almost invariable assumption of the law that jurors follow their instructions" is controlling here. *See Richardson v. Marsh,* 481 U.S. 200, 206, 107 S.Ct. 1702, 1707, 95 L.Ed.2d 176 (1987). Accordingly, we affirm the judgment.

## I.

On Super Bowl Sunday, January 20, 1985, the Video Place store at 1910 K Street, N.W., was burglarized.[2] The evidence showed that the police, in responding around 8 p.m. to a radio call of an activated burglar alarm at that address, found a broken glass door at the rear of the building and two sets of wet footprints leading into the lobby; a sledgehammer, chisel, and other objects were also found on the ground about five feet from the building. Officer Sydnor entered the building, heard footsteps coming down the stairs, and saw two African American males looking down at him over the railing. The officer identified himself and the two men ran up the stairs. Sydnor called out to the other officers, told the two men to halt and began following them up the stairs. As Officers Sydnor and Durant began searching each floor of the building for the two men, they heard a radio broadcast that the two men were on the elevator headed for the lobby. When the elevator reached the first floor, the door opened and appellant and another man were found inside. Before the door opened, Officer Detreci heard someone in the elevator say "It's okay. Its okay."[3] When the door opened, Walter Goode came out while appellant was pressing buttons in an effort to close the elevator. Officers Durant, Sydnor and Detreci identified appellant as one of the two men in the elevator, and Officer Sydnor identified appellant and Goode as the same two men he had seen on the staircase based on the fact that they matched the general description he had given and were the only two African American men found in the building. Approximately thirty minutes had elapsed between the time he saw the two men on the stairs and the time they were found in the elevator.

A further search of the building indicated that the Video Place store had been entered. According to the police, the store looked as though it had been ransacked. The officers believed entry had been gained through the fire door since ceiling tiles were on the floor and the door was open. Someone had also entered the inner office and tampered with the alarm box, forcing it open and pulling out the wires.

Ralph May, the property manager at 1910 K Street, N.W., testified that the building was secured by a Castle Card security system at the time of the incident, and that without a card electronically allowing entry, the only other way to get into the building was to be on the visitor list. Mr. May testified that appellant had no authority to be inside the building on the night in question. He also testified that the broken door cost approximately $420 to repair. The manager of the Video Place store stated that when she went to the store the morning after the break-in, she observed the damage to the store, saw that merchandise had been placed in plastic bags at various points in the store, and discovered that money was missing.

## II.

Walter Goode was called as a government witness on the third day of trial. After eliciting the fact that he was currently incarcerated, the prosecutor questioned Goode about his prior convictions. Goode admitted numerous criminal convictions, including his guilty plea to second-degree burglary for the Super Bowl Sunday offense.[4] After eliciting

---

2. Appellant's first conviction was reversed in *Wright v. United States,* 570 A.2d 731, 732–33 (D.C.1990) (error not to grant severance of two burglary counts that occurred on different days at same store).

3. Based on hearing appellant's voice after he was arrested, Officer Detreci testified that he thought appellant had made the statement.

4. Goode acknowledged his convictions for unlawful entry in 1981, attempted burglary in 1981, simple assault in 1981, petit larceny in 1981,

that the government had made no promises to him in connection with his plea to the burglary of which appellant stood charged, the prosecutor then asked Goode how he had entered the building at 1910 K Street, N.W., on that date. Goode initially said that he could not remember, but he then stated that there was only one way to get in and that he had walked in, gaining entry through a broken door. When the prosecutor asked him whether he was testifying that he found the glass door already broken, Goode stated that he could not remember and did not have any knowledge of who broke the glass door. Goode also claimed that no one was with him when he entered the building.

At the bench, the prosecutor claimed surprise, arguing that his case was "permanently damaged," and asked for permission to impeach Goode with his prior statements at his plea hearing and the statement he had given to the police when he was arrested. Concerned that Goode might perjure himself, the trial judge appointed counsel for Goode. Defense counsel raised both constitutional and evidentiary objections to Goode's testimony, and she requested that the trial judge conduct a competency voir dire of Goode, arguing that appellant had a constitutional right to cross-examine a competent witness. The prosecutor replied that the government saw no competency issue but simply a reluctant witness. Defense counsel also stated that if Goode asserted a Fifth Amendment privilege, the defense would move for a mistrial. In response to the trial judge's question concerning what prejudice appellant could suffer if Goode's testimony were struck, defense counsel responded that, in view of the fact that several police officers had testified that appellant and Goode had been arrested together, appellant would be severely prejudiced because he was inextrica-

bly linked—in the stairwell and the elevator—with a convicted felon having nine convictions. Defense counsel advised the trial judge, "And I don't think that's a bell that we can unring. I don't think a corrective instruction will take that from the mind of the jury."

Thereafter, Goode's attorney advised the trial judge that he did not think his client was incompetent, but in view of Goode's inability to remember he suggested that the judge strike Goode's testimony and instruct the jury to disregard it. Otherwise, if the prosecutor were allowed to proceed, the attorney advised, Goode would invoke the Fifth Amendment because he would risk subjecting himself to perjury charges. The prosecutor advised that in view of Goode's "sudden memory loss," the government wished to question Goode about the plea transcript and have him testify that he did not remember the events relating to the burglary. Defense counsel moved, on evidentiary and constitutional grounds, that any further testimony by Goode be barred, and that a mistrial was appropriate in the absence of overwhelming evidence against appellant.

The trial judge rejected the idea that Goode had a right to assert a Fifth Amendment privilege against testifying, and she denied Goode's motion to strike his testimony.[5] With regard to appellant's Sixth Amendment right to cross-examine, the trial judge ruled that *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), was dispositive of the procedure to be followed. Accordingly, the judge stated that the prosecutor could recall Goode and impeach him. The judge rejected defense counsel's renewed evidentiary and constitutional objections, noting that the situation did not indicate that Goode was incompetent or that the government could not attempt to

attempted robbery in 1984, burglary in the second degree in 1985 arising from the January 20, 1985 incident at 1901 K Street, prison breach, destruction of property and theft II. He also admitted that he was in jail for a parole violation.

5. The trial judge ruled that because Goode did not remember the events in question and there was no allegation that a prior statement was false, his Fifth Amendment right against self-

incrimination had not been implicated at this point, and hence his testimony would not be struck. Any error in this regard was made moot by subsequent events. Appellant also argues for the first time in his reply brief that the trial court should have explored further Goode's Fifth Amendment claim, warned him of contempt and immunized him from any further prosecution. We perceive no plain error. *Watts v. United States,* 362 A.2d 706, 709 (D.C.1976) (en banc).

impeach its witness. When Goode returned to the witness stand, however, he claimed that he could not recall his testimony of four days earlier, on May 17, 1990. Defense counsel renewed her objection to Goode's testimony on competency grounds. The trial judge offered the prosecutor the option of impeaching Goode with his earlier trial testimony. But, when Goode returned to the witness stand and the prosecutor asked him if he recalled his statements to the police on the day of his arrest and the day he entered his guilty plea to the Super Bowl Sunday burglary, the prosecutor was met again with Goode's lack of memory and concluded at this point that it would be "useless" to continue. Defense counsel renewed her motion to strike Goode's testimony on evidentiary and constitutional grounds. The prosecutor advised that he had no objection to the motion, and the judge granted the motion to strike, stating that she would instruct the jury to disregard Goode's testimony.

Defense counsel nevertheless also moved for a mistrial on the basis of prejudice suffered by appellant through association with a convicted felon, in effect renewing her argument that a motion to strike with an instruction could not cure the harm. Defense counsel argued that appellant had been "unsullied by any prior criminal conduct" before Goode's testimony and that prejudice would accrue to appellant as a result of the fact that Goode and appellant had become "inextricably bound together" by government testimony indicating that he and Goode were found together in the building.[6] Thus, had the government not begun its examination of Goode by bringing out his prior convictions and guilty plea, defense counsel continued, the jury would have been in a position to evaluate appellant's presence in the building without being tainted by association with Goode, who had pleaded guilty to the burglary charge arising from the same events. The trial judge denied the motion for a mistrial. The judge ruled that the government had presented a sufficiently strong circumstantial case and that appellant had not been prejudiced by the events surrounding Goode's testimony. The judge observed also that the testimony had come as a surprise to the government and that it was not improper for the government to first elicit its witness' prior convictions in order to "take the sting out." Underlying the judge's ruling was her view that Goode's testimony had not added anything to either side's case.[7] Thereafter, the trial judge instructed the jurors to strike Goode's testimony from their minds, and the government rested its case-in-chief.[8]

On appeal appellant contends that despite the striking of Goode's testimony and the giving of the associated curative instruction, the jury would inevitably have to conclude that a person arrested in a building with a convicted criminal, who had pleaded guilty to the crime charged, was also guilty of the offense. He argues that only Goode was in a position to provide overwhelming proof against appellant if he identified appellant as

6. Defense counsel maintained that the government's evidence was weak and circumstantial, there being no evidence connecting appellant to the charged offenses, because the government's evidence only placed appellant with Goode in a building with various means of entry other than smashing through the door.

7. The trial judge stated:
It still would—well, there still is not a guilt by association. [Goode] went in alone. It's hard to tell in terms of what precisely—I think you're left with the same position—I mean you have the testimony of the police officers who have the two of them together. [Goode's] testimony basically doesn't add anything other than to say that he went in. . . . The only issue is the fact that [Goode] has these convictions. And that by itself[,] I don't think it is sufficient.

8. The trial judge instructed the jury:

Ladies and gentlemen, I am going to be striking the testimony of Mr. Good[e]. What that means is that not only the questions that were asked, any of the answers that were given are not evidence in this particular case. So when you consider—you're going to be considering the evidence in this case, it does not include in any way any of the questions asked by the prosecutor and the answers given by Mr. Good[e]. He is out of—you should erase him from your mind in your consideration.
Now, I know that I told you at the beginning that you would be making a decision based on the evidence that would be presented as the Court was presenting it to you as evidence, that you were considered as part of this. Now I've stricken this testimony, which means it's not part of the case. And so you will be making the decision based just on the rest of the evidence that's been presented.

the other burglar. Because the trial judge did not strike Goode's testimony until after he had retaken the witness stand and claimed for a second time that he could not remember anything concerning the incident leading to his arrest, appellant maintains that Goode's earlier prejudicial testimony was thereby refreshed in the jurors' minds. Hence, he contends that the judge abused her discretion by denying a mistrial. By analogy to cases in which the trial court must take steps to ensure that a non-confessing defendant is not prejudiced by evidence of a confessing co-defendant's out-of-court statement, appellant maintains that it was clear to the jury that appellant was the other man who was arrested at the scene of the crime. Therefore, he contends that the trial judge should have realized that notwithstanding an instruction to strike Goode's testimony from their minds, the jurors could not in fact disregard Goode's testimony: "Whether or not the placing of Mr. Goode on the witness stand was prosecutorial misconduct in a traditional intentional context is not particularly important. What is important is that the appellant was inextricably connected with a convicted multiple felon in a manner which severely prejudiced him. . . ."

### III.

■ We begin our analysis with the observation that the challenge here is to the refusal of the trial court to grant a mistrial. We have consistently recognized the broad discretion of the trial court in such determinations, and our standard of review is deferential. We thus will reverse only " 'in extreme situations threatening a miscarriage of justice.' " *Goins v. United States*, 617 A.2d 956, 958 (D.C.1992) (citations omitted). *See also Lee v. United States*, 562 A.2d 1202, 1204 (D.C.1989) (decision will be reversed only where it is "unreasonable, irrational, or unfair, . . . or unless the situation is so extreme that failure to reverse would result in a miscarriage of justice"); *Edelen v. United States*, 627 A.2d 968, 971–72 (D.C.1993); *Beale v. United States*, 465 A.2d 796, 799 (D.C.1983), *cert. denied*, 465 U.S. 1030, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984). Moreover, "[w]henever possible, the court should seek to avoid a mistrial by appropriate cor-

rective action which will minimize potential prejudice." *Goins, supra*, 617 A.2d at 958.

### A.

■ We are reviewing here a request for a mistrial in circumstances where no error of any kind was committed, but rather an unexpected mid-trial event occurred which was a surprise to all concerned. The trial judge correctly ruled on the impeachment question, declining to find prosecutorial misconduct. "Nothing precludes either side from bringing out the prior criminal record of one of its own witnesses on direct examination as a matter of trial strategy, and precisely that tactic has been utilized by the government with judicial approval." *Kitt v. United States*, 379 A.2d 973, 975 (D.C.1977) (citing *United States v. Stroble*, 431 F.2d 1273, 1275 (6th Cir.1970); *United States v. Freeman*, 302 F.2d 347, 350 (2d Cir.1962), *cert. denied*, 375 U.S. 958, 84 S.Ct. 448, 11 L.Ed.2d 316 (1963)). The court has also held that "[t]he rule against impeachment of one's own witness forbids an attack on the credibility of the witness; the rule is not violated by the eliciting of evidence adverse to the witness' credibility as a matter of strategy." *Reed v. United States*, 452 A.2d 1173, 1179 (D.C. 1982) (proper for government "to 'take the sting out' of anticipated impeachment of the witnesses by the defense"), *cert. denied*, 464 U.S. 839, 104 S.Ct. 132, 78 L.Ed.2d 127 (1983). *See also Beale, supra*, 465 A.2d at 800. Although the prosecutor was aware before trial that Goode was a reluctant witness, the trial judge could properly conclude that this was not tantamount to bad faith on the part of the prosecutor. Appellant cites *United States v. Dougherty*, 810 F.2d 763 (8th Cir.1987), in support of his position, but that case tends to buttress the conclusion that the prosecutor acted within the range of appropriate conduct. *See Dougherty, supra*, 810 F.2d at 767 (prosecutor should have waited until direct examination before referring to the witness' conviction rather than doing so in his opening statement, letting "his 'zeal out run discretion' ") (quoting *United States v. Killian*, 524 F.2d 1268, 1274 (5th Cir.1975), *cert. denied*, 425 U.S. 935, 96 S.Ct. 1667, 48 L.Ed.2d 177 (1976)).

Under the circumstances, where the prosecutor was surprised by a witness' changed testimony and memory loss, we are unpersuaded that the government was precluded, beyond the limits in *Dorman v. United States*, 491 A.2d 455 (D.C.1984) (en banc), from beginning its direct examination of a former co-defendant, who had pleaded guilty to the crime of which the appellant stood charged, with a recitation of that witness' prior convictions.[9] A trial judge, upon a defense request, might well decide, in the exercise of sound discretion, to avoid the possibility of a situation such as occurred here, by directing that impeachment of a former co-defendant with prior convictions who has pleaded guilty to the crime at issue be postponed until later in the witness' direct examination. However, we find no basis here for placing a *sua sponte* obligation on the trial judge to take such precautionary steps. *Cf. Dixon v. United States*, 287 A.2d 89, 98–99 (D.C.) (case-by-case determination of need for *sua sponte* cautionary instruction), *cert. denied*, 407 U.S. 926, 92 S.Ct. 2474, 32 L.Ed.2d 813 (1972).

### B.

The question remains whether appellant has demonstrated that the failure of the trial court to grant a mistrial was so prejudicial as to threaten a miscarriage of justice. Here, the trial court instructed the jury to totally disregard the testimony of Goode. "This accords with the almost invariable assumption of the law that jurors follow their instructions." *Richardson, supra*, 481 U.S. at 206, 107 S.Ct. at 1707 (citing applications of the principle "in many varying contexts"). In determining the application of that assumption here, some guidance may be found in cases involving redacted statements by nontestifying co-defendants because Goode could not effectively be cross-examined, a situation somewhat analogous to a non-testifying co-defendant who, for a different reason, cannot be forced to take the witness stand or undergo cross-examination.

In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court concluded that the prejudice to the defendant from introduction of a facially incriminating statement by a nontestifying co-defendant could not be cured by a limiting instruction. However, in *Richardson, supra*, 481 U.S. at 203, 208, 107 S.Ct. at 1705, 1707, the Court distinguished the circumstances in *Bruton*, where the co-defendant's statement "expressly implicat[ed]" the defendant, from circumstances where a co-defendant's statement (implicating himself and a person other than the defendant) was incriminating only after the jury had linked it to other evidence introduced later at trial. Significantly, the Court observed that "[w]here the necessity of such linkage is involved, it is a less valid generalization that the jury will not likely obey the instruction to disregard the evidence [in determining the defendant's guilt]." *Id.* at 208, 107 S.Ct. at 1708. The Court explained further that the presumption that jurors follow limiting instructions is "rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process." The Court concluded that the remedy identified in *Bruton* was not required where the co-defendant's statement did not mention the defendant. *Id.* at 211, 107 S.Ct. at 1709; *see also Foster v. United States*, 548 A.2d 1370, 1378 (D.C.1988) ("a properly and effectively reacted statement substituting neutral references for names ... may be admitted into evidence at a joint trial (when coupled with proper limiting instructions) unless a 'substantial risk' exists that the jury will consider that statement in deciding the guilt of the defendant").

Although the *Bruton* issue arises in connection with two competing interests—Confrontation Clause rights and the judicial economy interest in joint trials—that are not

9. The record supports the trial judge's finding, with which defense counsel agreed, that there had been no bad faith on the part of the prosecutor. The judge credited the prosecutor's representation that Goode had not indicated prior to

taking the witness stand that he had no recollection of the events or that he intended to deviate from the statement that he had given at his plea hearing.

directly at stake in the instant case,[10] the circumstances of appellant's trial, in the face of Goode's memory loss, were similar in some respects to those of a defendant faced with admission of a non-testifying co-defendant's statement. To that extent, the instant case presents a similar question in evaluating the effectiveness of a limiting instruction. Here, the trial judge instructed the jurors to strike Goode's testimony from their minds. *See Harris v. United States,* 602 A.2d 154, 165 (D.C.1992) (en banc) (jury presumed to follow instructions and court will not assume to the contrary; no plain error during cross-examination regarding missing witness or closing argument). The circumstances in *Richardson, supra,* are markedly analogous to the situation before us. In *Richardson,* as here, the statement at issue was that of a co-defendant. In *Richardson,* as here, the statement, as reacted, in no way by its own terms implicated the appellant or even referred to his existence in recounting the crime. Indeed, here, the statement of Goode is even stronger in appellant's favor, since it affirmatively asserts that Goode acted alone in the crime. In *Richardson,* as here, the confession became incriminating as to the appellant "only when linked with evidence introduced later at trial." *Id.* 481 U.S. at 208, 107 S.Ct. at 1707. Nonetheless, the Court held, with such "inferential incrimination," there does not exist the "overwhelming probability of [the jurors'] inability to [obey instructions] that is the foundation of *Bruton*'s exception to the general rule." *Id.* If a confession actually introduced at trial with a co-defendant that, under the trial court's instruction, may be used against the co-defendant but not the appellant is not impermissible, it seems to us that such a confession which the trial court instructs be disregarded altogether is likewise not an event mandating a mistrial.

## IV.

■ We may deal summarily with appellant's remaining issues on appeal. Appellant argues that the evidence was insufficient to

sustain his convictions. Viewing the evidence, as we must, in the light most favorable to the government, we conclude that a reasonable jury could reasonably find appellant guilty beyond a reasonable doubt. *See Curry v. United States,* 520 A.2d 255, 263 (D.C.1987). The evidence of appellant's unauthorized presence in the building with Goode shortly after the police responded to a burglar alarm, the footprints, burglary tools, bags of tapes, and damage to the door and burglar alarm in the Video Place store, combined with the evasive actions of the two men upon seeing the police, were sufficient to support a reasonable inference that appellant and Goode perpetrated the charged crimes. *See Williams v. United States,* 357 A.2d 865, 867 (D.C.1976).

■ Likewise, we find no abuse of discretion by the trial judge in denying a mistrial on the ground that appellant was denied his Sixth Amendment right to cross-examine as a result of Goode's inability to remember relevant events. *See Owens, supra* note 10, 484 U.S. at 559, 108 S.Ct. at 842 ("[i]t is sufficient that the defendant has the opportunity to bring out such matters as the witness' bias, his [or her] lack of care and attentiveness, his [or her] poor eyesight, and even ... the very fact that he [or she] has a bad memory"). *See also Carr v. United States,* 585 A.2d 158, 161 (D.C.1991) (citing *Owens*); *Beatty v. United States,* 544 A.2d 699, 702 n. 4 (D.C.1988) (citing *Owens* ). Appellant's reliance on cases in which the scope of cross-examination was curtailed is misplaced. *See, e.g., Goldman v. United States,* 473 A.2d 852 (D.C.1984).

Accordingly, the judgment appealed from is

*Affirmed.*

---

10. This is so because Goode, formerly a co-defendant, pleaded guilty before appellant's trial, and because appellant's confrontation claim is limited by *United States v. Owens,* 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988). *See infra.*