**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thomas HOUGHTON,
Defendant-Appellant.**

No. 76–1381.

United States Court of Appeals,
First Circuit.

Argued Jan. 6, 1977.

Decided May 20, 1977.

Thomas G. Shapiro, Boston, Mass., by appointment of the Court, with whom Silverglate, Shapiro & Gertner and Harvey A. Silverglate, Boston, Mass., were on brief, for appellant.

Walter B. Prince, Asst. U. S. Atty., Boston, Mass., with whom James N. Gabriel, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and BOWNES,* District Judge.

* Of the District of New Hampshire, sitting by designation.

1. Rule 11 of the Federal Rules of Criminal Procedure provides in part:

(c) *Advice to Defendant.* Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and

(2) if the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if necessary, one will be appointed to represent him; and

(3) that he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and

BOWNES, District Judge.

This is an appeal from a jury finding and judgment of guilty of distributing one ounce of cocaine in violation of 21 U.S.C. § 811(a)(1) and 18 U.S.C. § 2.

Appellant has raised five issues which we discuss in order of importance.

The first issue is whether the district court's refusal to hold a Rule 11 hearing and accept an informed guilty plea from a former codefendant and eye witness so that he could testify deprived the appellant of his Sixth Amendment constitutional right to present witnesses in his defense.[1]

The facts bearing on this issue are these. The appellant and one John E. Harvey were charged in Count I of a three count indictment with distributing cocaine on June 3, 1975, in Waltham, Massachusetts. Counts II and III of the indictment charged Harvey and Russell Kaplan with distributing and possessing cocaine in Boston on August 19, 1975. On June 14, 1976, the date originally set for trial of all three defendants, Kaplan entered a plea of guilty to Count III with the understanding that the government would dismiss as to Count II. Harvey entered a plea of guilty to Count III of the indictment on the understanding that Counts I and II would be dismissed if the plea were accepted. The district court

(4) that if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial; and

(5) that if he pleads guilty or nolo contendere, the court may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement.

(d) *Insuring That the Plea is Voluntary.* The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or his attorney.

judge did not then conduct a Rule 11 hearing as to either Kaplan or Harvey, stating instead, "the matter may stand for the time being."

Appellant's counsel had previously informed the court by way of an affidavit of counsel in support of a motion for severance that he had personally interviewed Harvey and that Harvey had stated that he would testify, if it did not prejudice his own trial, that Houghton had neither distributed the cocaine in question nor received anything in connection with the sale.

Because of an ancillary matter not pertinent to this issue, the trial was postponed until June 16. Harvey was called by appellant as a witness. Before he took the stand, there was a bench conference and his attorney informed the court that Harvey would refuse to testify and invoke his Fifth Amendment privilege against self-incrimination as to the events of June 3. Appellant's counsel, Attorney Silverglate, then stated that he wanted to inquire of Harvey as to the events of June 3, "because if allowed to answer questions, I believe that Mr. Harvey would exculpate my client entirely from the charges in this indictment." He then stated: "Your Honor, I would ask if there is a Fifth Amendment problem, if your Honor would simply accept the plea or have the acceptance of plea hearing right now." The court ruled: "You can't ask for that because you do not represent him."

■ There is no doubt that the right to present witnesses in one's defense is a fundamental constitutional right. *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). But some showing has to be made that the witness will testify and as to what he will say. We analogize this situation to a motion for severance, as indeed it was on June 14 when the affidavit was filed. The denial of a motion for severance will be reversed only on a strong showing that the testimony of a codefendant will be actually available and exculpatory.

Motions for a severance so that a defendant may be able to call a codefendant to the stand are usually denied. The courts show a healthy, and quite justified, skepticism whether the defendant would call his codefendant if he could, and whether the codefendant would not claim his constitutional privilege even in a separate trial. Wright, Federal Practice and Procedure, Vol. 1 § 225 at 458.

■ We observe in the first place that the holding of a Rule 11 hearing and the acceptance of a guilty plea from Harvey by the district court could not constitute a waiver of his Fifth Amendment right against self-incrimination. *United States v. Johnson*, 488 F.2d 1206 (1st Cir. 1973). Sentence would probably not have been imposed at that time and Harvey, at the very least, had the right to refuse to testify until after he was sentenced.

There was no indication by either Harvey or his counsel that any testimony, exculpatory or otherwise, would be forthcoming if there were a Rule 11 hearing. Moreover, even if Harvey had testified as represented in the affidavit, he would not have necessarily corroborated the most significant aspect of appellant's testimony at trial, i. e., that appellant was not even present when the transaction occurred.

■ The burden is on the movant and the trial court has no duty to make an independent inquiry. Indeed, there was a danger here that any questioning by the court under these circumstances might have been perceived by Harvey as pressure to coerce him into testifying so as to bail out the appellant.

Appellant's counsel had two days between Harvey's plea and the trial to obtain a firm commitment that Harvey would testify if there were a Rule 11 hearing and the specific facts comprising such testimony. The silence of Harvey and his counsel when the matter came up at trial is good circumstantial evidence that there was no agreement by Harvey to testify on behalf of the appellant.

The district court did not abuse its discretion in refusing to hold a Rule 11 hearing during the trial as to Harvey.

The next two issues arise out of basically the same set of facts:

(a) Whether or not the district court should have dismissed the indictment because of alleged misconduct by government narcotic agents in not diligently making known to defense counsel the whereabouts of a government informant; and

(b) Whether or not the district court impermissibly limited the scope of cross-examination by defense counsel as to the alleged bias of the agents towards appellant.

On May 4, 1976, the district court ordered that the government disclose to defense counsel by May 25, 1976, the following:

(b) whether relevant material or information has been provided the government by an informant;

(c) whether any informant was present when the accused possessed with intent to distribute or distributed a controlled substance as alleged in any count of the indictment, and if any informant or informants were present, the name or names of each informant.

On May 27, 1976, the court amended its order as follows: " . . . the Government shall make a diligent and good faith effort to locate the informants and make them available for interviews with defendants' counsel." Because of the government's objection, the court did not require it to disclose the address of any informant. There was only one informant, Jeffrey Maher, and at least one of the narcotic agents had known his address since the summer of 1975.

The latest order of the court was received by the government on June 1, 1976, and a letter was sent the next day to defense counsel with the name of the informant and a statement that the government was making a good faith attempt to locate and make him available for an interview. A government agent, Boeri, contacted Maher at his home on Friday, June 4, 1976. The government claims, and there is no reason to doubt it, that this information was not communicated to the United States Attorney's office until Tuesday, June 8, two working days

later. The whereabouts of Maher was promptly given to defense counsel who conducted a telephone interview with Maher and his mother that day. Maher evinced considerable hostility towards defense counsel during the telephone conversation because he was told that he would have to testify at the trial. On June 14, the court granted a two day continuance so that Maher and his father could be deposed prior to trial.

Appellant filed a motion and affidavit in support thereof to dismiss the indictment based on governmental misconduct. The court denied the motion, but ordered criminal contempt proceedings filed against those governmental agents who appeared to have violated the court's order and appellant's counsel was appointed as special attorney to prosecute the contempt charges.

Appellant claims he was prejudiced because he was denied a personal interview with Maher and because Maher was hostile towards him for compelling him to testify. He also claims that he was prejudiced because Maher was present in court and heard defense counsel's allegations that led to the contempt proceedings against the agents. Additionally, appellant claims prejudice because the agents were bound to be hostile to his counsel due to his role as special prosecutor against them.

We address ourselves to the question of whether there was such deliberate misconduct by the government and prejudice to the defendant as to warrant a dismissal of the indictment.

*Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), is the seminal case on the government's duty to identify and locate an informer whose testimony is allegedly vital to the defense.

We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular

circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors. *Id.* at 62, 77 S.Ct. at 628. In *United States v. Williams*, 496 F.2d 378 (1st Cir. 1974), we delineated the standard of due diligence that the government must use in its efforts to identify and produce informants.

> . . . the government's duty under *Roviaro* to produce names and addresses requires it to produce correct information or at least to have exercised diligence reasonable under the circumstances to locate the informer. *Id.* at 382.

*See also United States v. Nutile* and *United States v. Indelicato*, 550 F.2d 701 (1st Cir. 1977).

There is a factual dispute as to whether there was deliberate governmental misconduct. The appellant claims that, since there was no hearing, this court must assume that there was actual misconduct. We make no such assumption, but look to the circumstances surrounding the trial to determine whether deliberate misconduct did, in fact, exist as to the whereabouts of the informant.

■ The dismissal of an indictment because of deliberate governmental misconduct is used as a prophylactic tool for discouraging future actions of the same nature. *Elkins v. United States*, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); *United States v. Belculfine*, 508 F.2d 58, 61 (1st Cir. 1974). The nature of the conduct must be such to convince the court of the need for a deterrent against similar governmental conduct in future investigations and prosecutions. The dismissal of the indictment has been invoked in egregious circumstances where "conduct" has clearly crossed over into the realm of "misconduct." In *United States v. Germany*, 32 F.R.D. 421 (M.D.Ala.1963), an indictment was dismissed where the government refused to comply with a court order to provide for funds to indigent defendant's counsel for expenses of travel and subsistence incurred in interviewing an informer. In *United*

*States v. Seafarers International U. of No. America*, 343 F.Supp. 779 (E.D.N.Y.1972), the indictment was dismissed where the government repeatedly failed to comply with disclosure orders thereby causing a twenty-three month delay of trial.

■ There is no such evidence of deliberate misconduct in this case. We have here a delay of two working days between a government agent locating the informant and the United States Attorney notifying defense counsel of his whereabouts.

Appellant's contention that his due process rights were violated by the government's effort to suppress exculpatory evidence, *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), flies in the face of the facts. There was no suppression of any exculpatory information. To the contrary, the informant was made available to defense counsel prior to trial and his deposition was taken. Moreover, the record reveals that the testimony of the informant was inculpatory, not exculpatory.

Appellant also contends that there was neither sufficient time nor access to the informant to enable him to adequately prepare for trial. The facts are that appellant had sufficient information to conduct a telephone interview with the informant on June 8, eight full days prior to trial. In addition, defense counsel had the opportunity to and did depose both Maher and his father two days prior to trial. Appellant argues, however, that the deposition was an inadequate substitute for a personal interview because of the presence of the United States Attorney. What appellant is really complaining about is the fact that Maher's trial testimony was less favorable than his deposition and much less favorable than what he stated in the telephone interview; in fact it was pretty damning. But Maher could have said anything he wanted in a private interview and then testified to the contrary at trial. The only sure way of pinning a witness down is getting a statement from him under oath prior to trial, and a deposition is the time-honored and most effective way of going this.

We find that the government acted with due diligence in furnishing the information about the informant and there was no prejudice to the appellant because of the delay.

█ Appellant further argues that he was prejudiced because the informant was hostile to him for compelling him to testify at the trial and that this hostility could have been avoided or mitigated by having the government call the informant as its witness. This is a specious argument. While the government has a duty to make witnesses available for the defense, it is under no obligation to call them to the stand. Hostility is a state of mind which can best be dealt with in the trial arena. The new federal rules of evidence give an attorney the right to impeach any witness whether or not he called him to the stand. Rule 607. There are some responsibilities defense counsel cannot shirk or avoid.

█ Appellant next advances the rather convoluted argument that there was prejudice due to the collateral criminal contempt proceedings against the government agents. His contention is that, because defense counsel was also the prosecutor in the pending criminal contempt proceedings, the government agents were hostile to defense counsel and thus testified more favorably to the government than they otherwise would. This, of course, implies perjury on the part of the government agents. As the government points out, the testimony of the agents tracked their reports and statements which, as Jencks Act materials, had been turned over to defense counsel at least one week prior to the June 14 hearing. There is no evidence that any bias or hostility changed or shaded their testimony. We find no prejudice to the defendant because of the pending contempt proceedings.

The next issue arising out of the informant situation is whether the court impermissibly limited the scope of cross-examination of the government's agents by barring any questions as to the pending contempt proceedings against them. It is the contention of the appellant that, because of the pending contempt proceedings, the agents must have been biased against him and his attorney and that his attorney should have been allowed to explore this on cross-examination.

█ No proper defense can be presented in a criminal case without thorough cross-examination of government witnesses. It is a constitutional right. *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931). The extent to which a witness may be cross-examined on any given subject is within the sound discretion of the trial judge. However, the line between what is and what is not proper examination is often a thin one and must be limited with the utmost caution and solicitude for the defendant's Sixth Amendment rights. The limitations upon cross-examination must be examined in light of the circumstances of each case and the trial court's determination will stand unless an abuse of discretion is shown. *United States v. Baker*, 494 F.2d 1262 (6th Cir. 1974).

█ Cross-examination as to possible bias of a witness is a powerful tool and should not be unduly restricted. The Supreme Court in *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974), stated that:

> Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i. e.*, discredit, the witness.

█ A defendant has a right to cross-examine as to bias except where such an inquiry would be irrelevant to establishing the credibility of the witness. This judgment is initially that of the trial court. The determination as to whether this case falls within the well established rules relative to the right of cross-examination must be based on the circumstances which were present at trial. An important considera-

tion is the importance of the witness' testimony in convicting the defendant.[2]

■ We find that the cross-examination was not impermissibly limited in this case. We have already noted that the agents' testimony was the same as was outlined in the Jencks Act material that had been delivered to defense counsel on June 14. In fact, defense counsel has pointed to no specific parts of the record that suggest a showing of bias in the testimony of any of the government's agents. There has been no showing here that any of the narcotic agents had any personal animosity against the defendant nor that they had evinced at any time any bias or hostility towards him.

■ Little time is necessary to dispose of the contention that the trial judge erred in denying the appellant's request for a jury waived trial upon the government's objection. Rule 23 of the Federal Rules of Criminal Procedure is clear and unambiguous. It provides:

> Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and *the consent of the government.* (Emphasis added.)

Appellant relies on dicta in *Singer v. United States*, 380 U.S. 24, 37, 85 S.Ct. 783, 791, 13 L.Ed.2d 630 (1965):

> We need not determine in this case whether there might be some circumstances where a defendant's reasons for wanting to be tried by a judge alone are so compelling that the Government's insistence on trial by jury would result in the denial to a defendant of an impartial trial.

*Singer* also explicitly held that requiring the consent of both the prosecuting attorney and the trial judge for waiver of a jury trial is constitutionally sound. *Singer, supra,* at 36, 85 S.Ct. 783. *See also Patton v. United States*, 281 U.S. 276, 312, 50 S.Ct. 253, 74 L.Ed. 854 (1930). Appellant also relies on *United States v. Ceja*, 451 F.2d 399 (1st Cir. 1971). We stated in *Ceja*:

> . . . we will . . . assume without so deciding that proof of circumstances set out in the *Singer* dicta would warrant granting the defendant a trial to the court notwithstanding prosecutor's objection thereto. 451 F.2d 401.

In *Ceja*, the defendant claimed that, due to his nationality, the jury was not impartial. No claim of partiality as to the jurors has been raised here. Appellant's claim that he was entitled to a jury waived trial is based solely on the assumption that a jury would not understand the informant situation and the situation in regard to the pending contempt proceedings. This does not fall within the meaning of the dicta in *Singer, supra*. Moreover, since we have already determined that the district court was correct in prohibiting cross-examination on these two matters, there is no merit at all in appellant's contention that he was constitutionally entitled to a jury waived trial.

■ Finally, appellant claims that the district court erred in its instruction to the jury on aiding and abetting. We have examined the charge carefully and find the instruction correct and in accord with the law.

*Affirmed.*

---

2. *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). The petitioner was denied his right to confront witnesses where witness' testimony provided key elements of state's case against petitioner. The prejudice claimed was based on the witness' vulnerable status as a probationer; *United States v. Colonial Motor Inn, Inc.*, 440 F.2d 1227 (1st Cir. 1971) conviction reversed where court refused to allow cross-examination on key witness' hidden motives to commit perjury; *United States v. Kartman*, 417 F.2d 893 (9th Cir. 1969), reversible error where cross-examination not allowed as to prosecution's sole witness' bias against anti-war demonstrators, a group to which defendant belonged; *Johnson v. Brewer*, 521 F.2d 556 (8th Cir. 1975), reversible error where key government witness had admitted that he had lied in prior case with similar modus operandi and defendant not allowed to inquire into bias; *United States v. Garrett*, 542 F.2d 23 (6th Cir. 1976), reversible error where court limited cross-examination in a drug case as to bias of police officer who was key witness and who had subsequently been suspended from police force as result of drug use.