## STATE

v.

## Peter TIERNAN.

No. 2006–306–C.A.

Supreme Court of Rhode Island.

Jan. 16, 2008.

Virginia M. McGinn, Esq., for Plaintiff.

John A. MacFadyen, III, Esq., for Defendant.

Present: WILLIAMS, C.J., and FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

On January 30, 2006, a jury found the defendant, Peter Tiernan, guilty of felony assault in violation of G.L.1956 § 11–5–2. Thereafter, on April 10, 2006, he was sentenced to a term of four years of probation, coupled with the additional requirements that he have no contact with the victim, participate in anger management counseling, and make restitution.

The defendant has appealed to this Court, contending that the trial justice violated his Sixth Amendment right to confrontation by excessively limiting his ability to cross-examine the accusing witness.

This case came before the Court for oral argument on November 5, 2007, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the record, the briefs submitted by the parties, and the oral arguments of counsel, we are of the opinion that cause has not been shown and that the case should be decided at this time. For the reasons set forth below, we sustain the appeal, vacate the judgment of conviction, and remand the case to the Superior Court for a new trial.

### Facts and Travel

On March 27, 2005, which happened to be Easter Sunday, Mr. Tiernan was driving his PT Cruiser easterly on Matunuck Schoolhouse Road (a two-lane road divided by a double yellow line) in South Kingstown, Rhode Island, on his way to church with his wife. As he drove, he could see two people riding bicycles in front of him on the road. The two bicyclists were Kevin Finnegan and his then girlfriend, Linn Floderus. They were riding on the same side of the road and in the same direction as Mr. Tiernan, and they were riding side

by side. Mr. Tiernan waited until a car that was driving in a westerly direction passed, and he then sounded his horn and proceeded to go around the two bicyclists. As Mr. Tiernan was passing the bicyclists, a verbal confrontation ensued between him and Mr. Finnegan. After passing the bicyclists, Mr. Tiernan stopped his vehicle and backed up. As Mr. Tiernan did so, Mr. Finnegan positioned himself at the left side of the vehicle, while Ms. Floderus positioned herself at the right of the vehicle. Mr. Finnegan and Mr. Tiernan then continued their verbal imbroglio.

According to the trial testimony of Mr. Finnegan, when the exchange of words had ended and as Mr. Tiernan was driving away from the scene, the PT Cruiser struck him and his bike, causing him to fall to the ground. After the impact, Mr. and Mrs. Tiernan continued on their way to church. After parking the car in the church parking lot and while preparing to walk into church, they noticed a scratch on the driver's side door of the PT Cruiser. At that point, Mr. and Mrs. Tiernan decided to go to the police station. Before they arrived at the station, however, a police officer pulled them over, discussed the Matunuck Schoolhouse Road incident with them, and took photographs of the vehicle, including one of the driver's side door.

On July 6, 2005, Mr. Tiernan was charged by criminal information with felony assault pursuant to § 11–5–2.[1] A jury trial commenced on January 25, 2006 and continued for four days.

At trial, during the cross-examination of the complaining witness, Mr. Finnegan, defense counsel attempted to ask questions about the nature and extent of the injuries that Mr. Finnegan had allegedly incurred at the time of the March 27, 2005 incident, but the prosecutor objected on grounds of relevance.

Defense counsel argued that the injuries were relevant to the issue of whether or not defendant's car had been used as a dangerous weapon at the time of the Easter Sunday incident. Counsel further—and significantly—argued that his inquiry into the alleged injuries was necessary for him to seek to show that the witness was biased. He stated that the inquiry was "extraordinarily significant" because it related "to a bias that this witness has while testifying * * *." He further stated: " * * * I intend to elicit * * * that this individual has made a series of claims of injury resulting from this incident with Mr. Tiernan, [and] that he currently has retained an attorney." Defense counsel was not subtle in explaining the purpose of his proposed line of cross-examination; he explicitly informed the trial justice that he was seeking to show that Mr. Finnegan had a "bias against [Mr. Tiernan] from the perspective of he has an incentive to testify in a particular way * * * because he is seeking monetary damages from [Mr. Tiernan] for a series of injuries which he has reported over time." Defense counsel also argued that Mr. Finnegan's statements about his injuries had changed over time and that that information was relevant to Mr. Finnegan's credibility.

The trial justice observed that, where a charge of felony assault is concerned, whether or not the victim was injured is not relevant. The trial justice specifically noted that the information filed by the state did not refer to any injury, but simply stated that Mr. Tiernan "did assault

---

1. General Laws 1956 § 11–5–2(a) provides: "Every person who shall make an assault or battery, or both, with a dangerous weapon, or with acid or other dangerous substance, or by fire, or an assault or battery which results in serious bodily injury, shall be punished by imprisonment for not more than twenty (20) years."

Kevin Finnegan with a dangerous weapon, to wit, a 2005 Chrysler PT Cruiser, in violation of [§] 11–5–2 of the [G]eneral [L]aws."

The trial justice then ruled that he would permit defense counsel to ask Mr. Finnegan whether or not he had filed or intended to file a civil suit as a result of the events that occurred on March 27, 2005. The court further ruled, however, that cross-examination would "be *limited to that question,* not for damages for injuries, pain and suffering, discomfort or any of those things, just to that point." (Emphasis added.)

At that juncture, the court took a recess. When the trial resumed, defense counsel again argued that he should be able to cross-examine the witness about "whether or not he anticipates bringing a legal action for monetary damages * * *." Defense counsel informed the trial justice that the witness had an attorney who had been observing the ongoing criminal trial and that it was counsel's understanding that Mr. Finnegan had made a demand to the insurance company and had advised the insurance company that he was a prospective party to a civil action. Notwithstanding this further argument and offer of proof,[2] the trial justice stood by his earlier ruling.

Defense counsel's cross-examination of Mr. Finnegan resumed, and the following very terse exchange took place:

"[DEFENSE COUNSEL]: Mr. Finnegan, is it your intention to seek monetary damages from Mr. Tiernan for damages that you say you sustained as a result of this incident on March 27, 2005?"

"[MR. FINNEGAN]: Yes."

On January 30, 2006, the jury found Mr. Tiernan guilty of assaulting Mr. Finnegan with a dangerous weapon. On April 10, 2006, the court sentenced him to four years of probation. The court also ordered Mr. Tiernan to have no contact with Mr. Finnegan, to engage in anger management counseling, and to make restitution. A judgment of conviction was entered on April 12, 2006, and Mr. Tiernan filed a timely notice of appeal with this Court on April 17, 2006.

On appeal, Mr. Tiernan contends that he should have been permitted to cross-examine the complaining witness, Mr. Finnegan, in some detail regarding: (1) Mr. Finnegan's escalating claims of injuries resulting from the March 27, 2005 incident; (2) Mr. Finnegan's statements to various healthcare providers regarding the point of impact, which statements were allegedly inconsistent with his trial testimony; and (3) Mr. Finnegan's intended civil suit. He argues that more extensive exploration of these issues could have had a material impact on the jury's evaluation of the witness's credibility and possible bias. The defendant maintains that the trial justice overly restricted his cross-examination regarding Mr. Finnegan's planned civil suit, and he argues that more extensive cross-examination was essential to his plan to test Mr. Finnegan's credibility and to explore his possible bias.

## Analysis

The Sixth Amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." Similarly, the Declaration

---

**2.** Defense counsel made several offers of proof in this case—a practice that is often mandatory. *See* Rule 103 of the Rhode Island Rules of Evidence. It should be noted, however, that an offer of proof is not always required in the cross-examination context. *See State v. DeBarros,* 441 A.2d 549, 551–52 (R.I.1982).

of Rights, article 1, section 10, of the Rhode Island Constitution, provides that "[i]n all criminal prosecutions, accused persons shall enjoy the right * * * to be confronted with the witnesses against them." Indeed, the right of accused persons to confront the witnesses against them has ancient and venerable roots,[3] and this Court has ardently protected this right. *See, e.g., State v. Pettiway,* 657 A.2d 161, 163–64 (R.I.1995); *State v. Freeman,* 473 A.2d 1149, 1153–54 (R.I. 1984); *State v. Parillo,* 480 A.2d 1349, 1356–59 (R.I.1984); *State v. DeBarros,* 441 A.2d 549, 551–53 (R.I.1982).[4]

The right of confrontation "means more than being allowed to confront the witness physically." *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Indeed "[t]he main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.*" *Id.* at 315–16, 94 S.Ct. 1105 (internal quotation marks omitted); *see also Delaware v. Van Arsdall,* 475 U.S. 673, 678, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Cross-examination connotes searching and often intense scrutiny. During cross-examination, the factfinder, whether judge or jury, is enabled to observe and evaluate the entirety of what transpires as the witness is examined, in-cluding the witness's body language and expressions of emotion. Cross-examination, when well conducted, is not a desiccated syllogistic exercise, but is rather a multifaceted attempt at unveiling what might lie behind the direct testimony of the witness.

This Court has emphatically stated that "[t]he right of cross-examination is guaranteed to a criminal defendant because it is the principal means by which the credibility of the witness and the truthfulness of his [or her] testimony can be tested." *Parillo,* 480 A.2d at 1357 (internal quotation marks and punctuation omitted); *see also Davis,* 415 U.S. at 316–17, 94 S.Ct. 1105 ("We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination."); *Greene v. McElroy,* 360 U.S. 474, 496, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959) (emphasizing the importance of the right of cross-examination especially with regard to a witness's motivation in testifying); *State v. Briggs,* 886 A.2d 735, 745 (R.I.2005) (stating that the right of a criminal defendant to cross-examine the witnesses against him or her "is the primary means by which a criminal defendant may challenge the veracity of a witness's testimony"). In the same vein, cross-ex-

---

**3.** *See Coy v. Iowa,* 487 U.S. 1012, 1015–16, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988) (alluding to the fact that a right of confrontation existed even as far back as the time of the Roman Empire); *see also Crawford v. Washington,* 541 U.S. 36, 43–50, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (summarizing the history of the right to confrontation and the concomitant right to be able to conduct cross-examination); *see generally* Frank R. Herrmann & Brownlow M. Speer, *Facing the Accuser: Ancient and Medieval Precursors of the Confrontation Clause,* 34 Va. J. Int'l L. 481 (1994).

**4.** In admirably plain language, President Eisenhower, speaking in 1953 and recalling the "code" that prevailed in the town of Abilene, Kansas, where he was raised, nicely summarized what the right of confrontation means in the real world:

"In this country, if someone dislikes you, or accuses you, he must come up in front. He cannot hide behind the shadow. He cannot assassinate you or your character from behind * * *." Daniel H. Pollitt, *The Right of Confrontation: Its History and Modern Dress,* 8 J. Pub.L. 381, 381 (1959) (quoting the remarks of President Eisenhower at a dinner celebrating the 40th anniversary of the B'nai B'rith Anti–Defamation League, November 23, 1953).

amination has been described by an eminent scholar as "beyond any doubt the greatest legal engine ever invented for the discovery of truth." 5 John H. Wigmore, *Evidence in Trials at Common Law* § 1367 at 32 (Chadbourn rev.1974); *see also State v. Silvia,* 898 A.2d 707, 715 n. 6 (R.I.2006).

■ Moreover, the potential bias of a witness is always subject to exploration by cross-examination, and it is "always relevant as discrediting the witness and affecting the weight of his testimony." 3A John H. Wigmore, *Evidence in Trials at Common Law* § 940 at 775 (Chadbourn rev. 1970); *see also* Davis 415 U.S. at 316, 94 S.Ct. 1105. As such, "[c]ross-examination as to possible bias of a witness is a *powerful tool* and should not be unduly restricted." *United States v. Houghton,* 554 F.2d 1219, 1225 (1st Cir.1977) (emphasis added). Indeed, as we have previously stated:

> "It is the *essence* of a fair trial that *reasonable latitude* be given the cross-examiner. This latitude should include an opportunity for a defendant to establish or reveal possible bias, prejudice, or ulterior motives as they may relate to the case being tried." *State v. Anthony,* 422 A.2d 921, 924 (R.I.1980) (emphasis added).[5]

■ It is certainly true that trial justices retain a considerable degree of discretion to impose reasonable limitations on cross-examination in order to prevent, *inter alia,* harassment, prejudice, confusion, or repetitive testimony. *See Van Arsdall,* 475 U.S. at 679, 106 S.Ct. 1431; *Davis,* 415 U.S. at 316, 94 S.Ct. 1105; *see also State v. Oliveira,* 882 A.2d 1097, 1122–23 (R.I. 2005); *Pettiway,* 657 A.2d at 163. A trial justice has no discretionary authority,

however, to completely (or virtually so) prohibit defense counsel from attempting to elicit testimony regarding bias on the part of the witness. *See, e.g., Parillo,* 480 A.2d at 1357; *DeBarros,* 441 A.2d at 552; *see also Houghton,* 554 F.2d at 1225.

■ It is important to emphasize that the authority of the trial justice "to limit cross-examination comes into play [only] *after* there has been permitted as a matter of right *sufficient* cross-examination to satisfy the Sixth Amendment." *Parillo,* 480 A.2d at 1357 (internal quotation marks omitted) (emphasis added); *see also United States v. Tracey,* 675 F.2d 433, 437 (1st Cir.1982) ("Although the trial judge retains the traditional discretion to limit the scope of cross-examination, discretion in the area of bias evidence becomes operative only after the constitutionally required threshold level of inquiry has been afforded the defendant."); *United States v. Bass,* 490 F.2d 846, 857–58 n. 12 (5th Cir.1974) (noting that the discretionary authority of the trial justice to limit the scope of cross-examination applies only after there has been sufficient cross-examination to satisfy the Sixth Amendment); *State v. Balisbisana,* 924 P.2d 1215, 1220 (Haw. 1996) ("[T]he trial court's discretion in exercising control and excluding evidence of a witness's bias or motive to testify falsely becomes operative only after the constitutionally required threshold level of inquiry has been afforded the defendant."); 2 Michael H. Graham, *Handbook of Federal Evidence* § 611:10 at 785 n. 6 (6th ed.2006) (noting that the trial court's "discretionary authority to limit cross-examination is available only after the defendant has been permitted sufficient cross-examination to satisfy the Sixth Amendment"). These

---

**5.** *Cf. State v. Silvia,* 898 A.2d 707, 715 (R.I. 2006) (perceiving no abuse of discretion in a trial justice's limitations on the scope and extent of cross-examination in view of the fact

that "[t]he record quite clearly indicates that defendant was afforded a genuinely meaningful and broad opportunity to use the potent tool of cross-examination").

principles are particularly relevant when a party is seeking to establish the bias of a witness.

■ Thus, total or virtually total preclusion of cross-examination by trial counsel with respect to possible bias constitutes constitutional error,[6] and for that reason, since the verdict must be vacated on a *per se* basis, we need not engage in any harmless error analysis. *See DeBarros*, 441 A.2d at 552 (recognizing a *per se* error rule in situations when a trial justice bars an attempt to place before a jury the witness's bias or motive). In applying the *per se* error rule, we follow the standard enunciated by the Supreme Court in Davis:

> "We cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted this line of reasoning had counsel been permitted to fully present it. But we do conclude that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [that witness's] testimony * * *." 415 U.S. at 317, 94 S.Ct. 1105.

■ In the instant case, defense counsel sought to demonstrate to the jury the possibility of bias and prejudice on the part of Mr. Finnegan. As defense counsel advised the court, that was why he wished to question Mr. Finnegan about his intended civil suit against defendant.[7] However, defense counsel was cut off at the threshold of this line of inquiry; he was allowed to ask only the preliminary question as to whether or not the complaining witness was contemplating filing a civil suit. We are convinced that, because the trial jus-

tice afforded counsel virtually no latitude to explore by cross-examination the complaining witness's potential bias in view of his intended civil suit, the scope of cross-examination that was afforded defendant did not constitute sufficient cross-examination under the Sixth Amendment, and thus we apply the *per se* rule of prejudicial error. *See Parillo*, 480 A.2d at 1357; *DeBarros*, 441 A.2d at 552.

While defense counsel was permitted to ask Mr. Finnegan the bare question as to whether or not he intended "to seek monetary damages from Mr. Tiernan"—thus minimally establishing on the record some modicum of evidence that the witness might potentially be biased—defense counsel was then precluded from further exploring to any degree the extent of that potential bias. It is clear from the record that Mr. Finnegan intended to file a civil suit; accordingly, it would plainly be in Mr. Finnegan's interest to perpetuate a version of the facts that maximized his own injuries and the fault of defendant. Mr. Finnegan may have been motivated by a belief that, if defendant were convicted of the charges against him, evidence of such convictions might be admitted in a subsequent civil trial. Indeed, Mr. Finnegan may have viewed the possibility of obtaining a conviction as substantially bolstering a later action for civil damages.

Given the above-referenced considerations that might have motivated the witness to testify inaccurately, defense counsel should have been permitted to subject Mr. Finnegan to more extensive cross-examination regarding any possible bias on his part due to the contemplated civil claim. We are impressed by the state-

---

6. "[A] defendant is entitled to present his theory of bias or motive to the jury." *State v. Parillo*, 480 A.2d 1349, 1357 (R.I.1984); *see also State v. Freeman*, 473 A.2d 1149, 1153–54 (R.I.1984); *DeBarros*, 441 A.2d at 552.

7. On the basis of what defense counsel articulated on the record in response to the prosecutor's objection, it is our understanding that counsel wished to attempt to convince the jury that Mr. Finnegan was biased and lacking in credibility due to the fact that he intended to file a civil suit against defendant.

ment of the United States Court of Appeals for the District of Columbia Circuit to the effect that "[a] general rule has evolved * * * to the effect that the trial court should allow cross-examination and the airing of evidence with respect to a witness's pending, or even contemplated, suit against the defendant." *United States v. Gambler*, 662 F.2d 834, 837 (D.C.Cir. 1981); *see also State v. Whitman*, 429 A.2d 203, 205 (Me.1981) ("A pending civil suit, or even a contemplated suit, arising out of the same incident that gave rise to the criminal charges is almost always relevant to the credibility of a prosecuting witness because it gives [the witness] a financial interest in the outcome of the criminal prosecution.")[8]; *see generally* 3A John H.

Wigmore, § 949 at 788 ("The *pendency of civil litigation* between the witness and the opponent is usually relevant, not only as a circumstance tending to create feeling, but also as involving conduct expressive of feeling * * *."); Annotation, *Right to cross-examine prosecuting witness as to his pending or contemplated civil action against accused for damages arising out of same transaction*, 98 A.L.R.3d 1060, 1063 (1980) ("The general rule is that it is proper for the accused to cross-examine the prosecuting witness as to his pending or contemplated civil action against the accused, in order to demonstrate any possible bias or prejudice arising out of the witness' financial interest in the outcome of the prosecution.").

**8.** Numerous other federal and state appellate courts have held to the same effect. *See, e.g., United States v. Harris*, 185 F.3d 999, 1008 (9th Cir.1999) ("A defendant may ordinarily cross examine a prosecution witness to prove bias by proving that the witness is suing him."); *United States v. Cohen*, 163 F.2d 667, 669 (3d Cir.1947) (holding that whether or not a witness has instituted a civil suit has a direct bearing on the witness's credibility, bias or prejudice); *State v. Taylor*, 9 Ariz.App. 290, 451 P.2d 648, 652 (1969) (holding that it was error to deny defendant in criminal case the right to cross-examine mother of complaining witness "as to whether a civil action was being filed" against defendant from same incident); *State v. Liuafi*, 1 Haw.App. 625, 623 P.2d 1271, 1275 (1981) (holding that trial court erred in refusing to allow defendant to show that prosecution witness, the victim of the charged crime, was planning a civil suit against defendant); *Martin v. State*, 364 Md. 692, 775 A.2d 385, 389–90 (2001) (finding no distinction between contemplated and pending civil lawsuits with regard to cross-examination and holding that "action taken in contemplation of the commencement of a civil lawsuit against a criminal defendant by a prosecuting witness is relevant to the witness's credibility and may be evidence that a witness has an interest in the outcome of the trial"); *Commonwealth v. Elliot*, 393 Mass. 824, 473 N.E.2d 1121, 1124 (1985) ("The institution of a civil suit based upon a criminal offense, while entirely legitimate, can cre-

ate financial motive for the victim to falsify testimony in order to secure a criminal conviction. Therefore, we have recognized the defendant's right to probe into such matters to reveal a witness's bias and personal interest."); *State v. Decker*, 161 Mo.App. 396, 143 S.W. 544, 544 (1912) (holding that inquiry into whether or not the witness had contemplated "bringing a civil action against the defendant predicated upon the facts she had testified to" was proper); *State v. Arlington*, 265 Mont. 127, 875 P.2d 307, 315–16 (1994) (holding that evidence of a witness's contemplated civil lawsuit is relevant evidence admissible to show that witness may have motive to testify falsely); *State v. Etienne*, 146 N.H. 115, 767 A.2d 455, 457 (2001) (reiterating previous holding that a defendant's right to confront adverse witnesses "includes the right to cross-examine regarding motive and bias arising from contemporaneous civil actions in which the witness has a financial interest"); *People v. Bruno*, 77 A.D.2d 922, 431 N.Y.S.2d 106 (N.Y.App.Div.1980) (holding that trial court erred when it did not allow defendant to show that complaining witness had taken "some action in contemplation of commencement of a civil lawsuit against defendant" arising out of the same set of circumstances); *Commonwealth v. Birch*, 532 Pa. 563, 616 A.2d 977 (1992) (holding that it was error for the trial court to preclude defense counsel from questioning witness regarding a contemplated civil suit).

Such more extensive inquiry might have included questions about whether or not Mr. Finnegan had met with a lawyer, what type of damages Mr. Finnegan was expecting to recover as a result of a civil suit, and whether or not Mr. Finnegan believed that a conviction in the criminal case would benefit him in a civil suit. The responses by Mr. Finnegan to such questions might have seriously weakened his credibility in the eyes of the jurors, and the jury, in a criminal case, should be afforded a full and adequate basis upon which to assess the credibility of the witnesses, especially that of an accusing witness.

■ After viewing the record in its entirety, it is our conclusion that, although defense counsel was not totally precluded from attempting to show that Mr. Finnegan was a biased witness, the scope of cross-examination that the trial justice allowed—just one question—was so limited as to be insufficient under both the Sixth Amendment to the United States Constitution and article 1, section 10 of the Rhode Island Constitution.[9] A defendant in a situation such as this must be provided as a matter of right the opportunity to engage in not just some minimal cross-examination, but rather *sufficient* cross-examination.

Although preclusion of cross-examination as to the possibility that Mr. Finnegan might be biased was not total, it was virtually total. While trial justices are unquestionably vested with considerable discretionary authority to impose reasonable limitations on "cross-examination," the single question and answer which were allowed in this case with respect to the issue of possible bias are so far removed from the vigorous probing that the term "cross-examination" connotes in our tradition, that we view what occurred as being tantamount to a complete denial of the right to cross-examine the complaining witness about his possible bias. It is clear to us that the cross-examiner was not accorded the "reasonable latitude" which this Court has characterized as pertaining to "the essence of a fair trial." *Anthony,* 422 A.2d at 924; *see also Alford v. United States,* 282 U.S. 687, 692, 51 S.Ct. 218, 75 L.Ed. 624 (1931); *DeBarros,* 441 A.2d at 551. Thus, the trial court's ruling that foreclosed further cross-examination and limited defense counsel to one question that called for only a yes or no response constituted a *per se* violation of the defendant's constitutional right of cross-examination, and the defendant is entitled to a new trial.[10]

### Conclusion

For the reasons stated herein, we sustain the appeal and vacate the judgment of conviction. The papers in the case may be remanded to the Superior Court for further proceedings.

Justice GOLDBERG did not participate.

---

**9.** Indeed, as defendant cogently points out in his brief to this Court, Mr. Finnegan's one-word acknowledgement that he intended to pursue a civil suit does not constitute effective cross-examination. The brief sardonically observes that "[i]f this were so, criminal cases could be prosecuted by answers to interrogatories." *See also California v. Green,* 399 U.S. 149, 157 n. 10, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) (discussing the evidentiary abuses in the treason trial of Sir Walter Raleigh in 1603).

**10.** Because we have determined that defendant is entitled to a new trial based on the excessive limitation of defense counsel's cross-examination of the complaining witness with respect to his possible bias, we need not address defendant's other appellate arguments.